Rule accordingly.

---

PERCIVAL *against* HICKEY.

*Where an act not wilful but the result of negligence, is the immediate and direct cause of an injury, an action of trespass vi et armis will lie.*

*Where a belligerent cruiser chases a neutral vessel, supposing her to be an enemy, or for the purpose of search, and in coming up with her, through negligence, runs foul of the neutral vessel, which had hove to in the night, by which she was sunk and lost, an action of trespass lies, at common law, at the suit of the neutral, against the commander of the ship of war, for the damages sustained; it being considered as a marine tort merely, of which a court of common law has concurrent jurisdiction with the instance Court of Admiralty.*

*Under the last or general interrogatory, a witness examined under a commission may, in his answer, state facts not drawn forth by the previous particular interrogatories.*

*Where a vessel has been captured and condemned, though the owner recovers the amount of the freight from the insurers, the seamen have not, therefore, a right to receive their wages. So, where a neutral vessel was run foul of by a belligerent cruiser, and was sunk and lost, the seamen are not entitled to their wages, though the neutral owner recovered the full value of the vessel and cargo in an action of trespass against the commander of the belligerent ship.*

*Exemplifications of the proceedings in another Court, between the same parties, for the same cause of action, are not admissible in evidence under the general issue; but the pendency of another suit, in another Court, for the same matter, should be pleaded in abatement.*

THIS was an action of *trespass,* for running down the vessel of the defendant at sea, tried before Mr. Justice *Yates,* at the *New-York Sittings,* in *April,* 1819. The testimony of the witnesses given at the trial was contradictory. The following are the material facts in the case:

The defendant was commander of the *British* sloop of war *Atalanta,* cruising in company with the *Cleopatra,* captain *Pechell,* his senior officer. On the 2d of *May,* 1810, in latitude about 32 degrees north, and longitude 33 degrees west, about noon, a signal was given for the chase of a vessel to the windward, (the schooner *Mary,* commanded by the plaintiff.) The chase was continued until about 8 o'clock, in the evening, the wind increasing and blowing hard, and the *Atalanta,* firing guns at intervals, to bring the chase to, but which were disregarded. A little past 8 o'clock, (as *T. O. Sumner,* a seaman on board the *Atalanta,* and a witness for the plaintiff, testified) the man on the forecastle of the *Atalanta* called out, that the schooner was under the *lee* bow with a light out. The *Atalanta* began to shorten sail, but before it could be done, she passed the *Mary,* firing some muskets and a gun as she passed. The defendant ordered the *Atalanta* to tack,

but she wore round, and as soon as she wore, the man on the forecastle called out " hard a starboard, if not, we go into the schooner." The defendant, who was standing on the poop, ordered silence, and directed the helm to be put *a port*, but before this could be done, the *Atalanta* struck the *Mary.* The *Atalanta* backed her sails to get clear, and the *Mary* fell to leeward, and soon after disappeared, and was supposed to have gone down. The plaintiff and his crew came on board the *Atalanta*, with nothing but the clothes which they had on at the time. The *Atalanta* struck the *Mary* between the fore and mainmast, and was herself much injured. The plaintiff's witnesses were of opinion, that if the helm of the *Atalanta* had been put *a starboard*, when the man at the forecastle called out, she would not have struck the *Mary.* The witnesses for the defendant deposed, that the night was very dark, the wind blowing hard and a heavy sea running; and that the accident was owing to the darkness of the night; that the helm of the *Atalanta* was ordered to be put up, and the sails to be thrown back, but before this could be done, the vessels struck each other; that the collision was wholly unintentional; that the chase was supposed to be a *French* vessel, and was under a heavy press of sail, endeavouring to escape. The plaintiff's witnesses, the chief mate and *T. O. Sumner*, stated, that the *Mary* was lying to when the *Atalanta* first passed her, and that during the chase, she had American colours flying at the top-gallant-mast head.

The plaintiff offered in evidence the answers of *N. Parker* and *T. Dodd*, to the *last* interrogatory annexed to a commission under which they were examined in, which answers they deposed as to the ownership of the vessel, and the nature and value of the cargo with which the *Mary* sailed from *Boston*, in *November*, 1809, previous to her loss as above stated, which evidence was objected to by the defendant's counsel, but the objection was overruled by the judge. It appeared from this evidence, that the *Mary* sailed from *Boston* in *November*, 1809, with a cargo of various articles, stated to be invoiced at above 15,000 dollars; that she proceeded to *Fayal*, and thence to *Teneriffe*, but without disposing of any of her cargo; that she then went to *Bona-*

ALBANY,
August, 1820.

PERCIVAL
v.
HICKEY.

*vista.* one .of the *Cape de Verd* islands, where she traded, and after going to *St. Jago,* and other places, returned again to *Bonavist ,* from which place she sailed, having on board a cargo, of the value of 15,000 dollars, including 2,000 dollars in specie. The vessel was valued at 8,000 dollars. *E. Howard,* the mate of the *Mary,* was offered as a witness to prove the ownership of the *Mary,* and the nature and value of her cargo at the time she was run foul of by the *Atalanta.* His evidence was objected to ; but the objection was over-ruled by the judge. After he had given his evidence, the counsel for the defendant again objected to the witness, on the ground of interest disclosed during his examination, which rendered him incompetent; he having stated that be-sides his *wages,* which remained unpaid, he had an adventure on board the *Mary.* at the time she was run down, which was worth about one thousand dollars. and which was lost by that accident ; but the objection was overruled.

The defendant's counsel then moved for a nonsuit, on the ground, that the evidence as to the ownership of the vessel, and the value of the vessel and cargo, was incompetent, and too uncertain to go the jury ; and, secondly, because the Court had no jurisdiction of the cause ; but the judge over-ruled the motion, and the defendant's counsel excepted to his opinion.

The defendant's counsel then offered to prove that the loss of the *Mary* was not the result either of design or neg-ligence on the part of the defendant, but was owing either to inevitable accident, or to the negligence or mismanagement of the plaintiff. The counsel for the plaintiff objected to this evidence, as inadmissible under the plea of not guilty, but the objection was overruled by the judge ; and the deposi-tions of the purser, and two of the crew of the *Atalanta,* and of Captain *Pechell,* of the *Cleopatra,* taken under a commis-sion, were read. Several experienced ship masters were also examined as witnesses, and stated their opinions as to the conduct and management of the *Atalanta,* under the circum-stances stated by the other witnesses.

The defendant's counsel offered to show that proceedings had been instituted by the plaintiff against the defendant, in the High Court of Admiralty in *England,* to recover dama-

ALBANY,
August, 1820.

PERCIVAL
v.
HICKEY.

ges for the injury complained of, and produced and offered to read an exemplified copy of the *monition,* issued at the suit of the plaintiff against the defendant, to proceed to adjudication in the case of the *Mary,* dated the 10th of *November,* 1810. The plaintiff's counsel objected to this evidence, and the objection was sustained by the judge. The counsel for the defendant then offered in evidence, exemplified copies of depositions, with exhibits annexed, taken in the Admiralty Court, in the same case, but which did not contain the examinations of the mate and other witnesses on the part of the libellant in that case. The plaintiff's counsel objected to this evidence, and it was overruled by the judge, to whose opinion the defendant's counsel excepted.

The defendant's counsel again moved for a nonsuit, on the grounds before stated, and, also, because, that if any action could be maintained, it should be an action on *the case,* and not trespass, but the motion was again overruled by the Judge.

The cause was then summed up by the counsel on both sides, and the Judge charged the jury, that if they should believe, that the disaster was the result either of design or negligence in the defendant, they ought to find a verdict for the plaintiff, or if they believed it to have been intentional on the part of the defendant, supposing the *Mary* to be a *French* vessel, the plaintiff would be entitled to a verdict; but if the jury believed the accident to have been involuntary and unavoidable, they ought to find a verdict for the defendant. That exemplary damages ought to be allowed, in case the defendant did the act intentionally, not supposing the *Mary* to be a *French* privateer; but if he did suppose her to be such, and did the act intentionally, or if it was attributable to negligence in the defendant, the jury might, in either case, allow interest upon the value of the vessel and cargo from the time of the loss, not as *interest,* but as damages. The Judge, also, suggested to the jury, that if they should find for the plaintiff, they might state, as part of their verdict, whether the *Mary* was run down through design, or through negligence or mismanagement of the defendant; and if they should be of opinion, that it was done through design, whether the defendant did it, supposing the

*Mary* to be an enemy, or *French* vessel, or believing her to be a neutral.

The jury found a verdict for the plaintiff for 29,734 dollars and 94 cents damages, and declared as a part of their verdict, that the disaster was the result of gross negligence in the defendant.

A motion was made to set aside the verdict, and for a new trial.

*D. B. Ogden*, for the defendant. 1. The action should have been *case*, not trespass. The jury have found, that the injury to the plaintiff was caused by the *negligence* of the defendant. Though there may be a diversity of opinion among the *English* Judges, as to what is the proper criterion of distinction between trespass, and trespass on the case; yet nothing will be found in the cases decided in *England*, or in our own Courts, to show, that *case* is not the proper form of action for an injury of this kind. In *Ogle* v. *Barnes*, (8 *Term Rep.* 188.) *Lawrence*, J. says, the injury " may be occasioned by the wilful act, or by the neg·ligence of the defendant; it is a question of evidence; if the former, trespass is the proper action; if the latter, trespass on the case." That was an action for so negligently steering the vessel of the defendant, as to run foul of the plaintiff's vessel, and *case* was held to be the proper action. In *Scott* v. *Shepherd*, (3 *Wils. Rep.* 403 408.), *Nares*, J. says, " if the act, in the first instance, be unlawful, trespass will lie; but if the act is *prima facie* lawful, and the prejudice to another is not *immediate*, but *consequential*, it must be an action on the case." *Blackstone*, J. places it on the distinction between the injury being *immediate* or *consequential*. The jury, in this case, have found merely a negligence, or omission to do some act; not the commission of an act directly injurious. Admitting that the plaintiff might elude the belligerent right of search; yet if, by his efforts for that purpose, he prolonged the chase until dark, the consequence rests with him, not with the defendant. In *Day* v. *Edwards*, (5 *Term Rep.* 648.) Lord *Kenyon* said, the distinction between the actions of trespass, and trespass on the case, was perfectly clear. " That if the

injury be committed by the *immediate act* complained of, the action must be trespass ; if the injury be merely consequential upon the act, that action upon the case is the proper remedy." In that case, the defendant furiously drove his cart against the plaintiff's carriage. In *Savignac* v. *Roome*, (6 *Term Rep.* 125.) the declaration was that the defendant's servant *wilfully* drove against the plaintiff's carriage ; the injury was immediate, and trespass was held to be the proper action. In *M'Manus* v. *Cricket*, (1 *East Rep.* 106.) Lord *Kenyon* held, that for the wilful act of a servant, without the command of his master, trespass would not lie against the master, and so far the case of *Savignac* v. *Roome* was overruled. (*Morely* v. *Gaisford*, 2 *Hen. Bl.* 442.) In the case of *Ogle* v. *Barnes*, (8 *Term Rep.* 188.) the action was for carelessly and *negligently* steering the vessel of the defendant, so that it run foul of the plaintiff's vessel, with great force ; and it was objected, that trespass should have been brought, but the Court held, that an *action on the case* was the proper remedy. That case is precisely like this, for the jury have found, that the injury was caused by the *negligence* of the defendant. (*Tripe* v. *Potter*, cited by *Grose*, J.) In *Leame* v. *Bray*, (3 *East Rep.* 593.) the defendant himself drove the carriage, and on the wrong side of the road, and if he had driven on the right side, the accident would not have happened ; he was doing an unlawful act, and trespass was held to lie. In the present case, the defendant was not at the helm, and was in the exercise of his lawful right. The case of *Leame* v. *Bray* has been much doubted, (*Rogers* v. *Imbleton*. *Hugget* v. *Montgomery*, 5 *Bos & Pull.* 117. 446.) but in *Lotan* v. *Cross*, (2 *Campb. N. P. Rep.* 464. Lord *Ellenborough* recognizes the case of *Leame* v. *Bray*. In *Covell* v. *Laming*, (1 *Campb. N. P. Rep.* 49.) the defendant was himself at the helm. The case of *Nicholson* v. *Mounsey* and *Symes*, (15 *East Rep.* 384.) was an action on the case, and the captain of the sloop of war was held not to be answerable for running down the plaintiff's vessel, not being on deck, and the vessel being, at the time, under the immediate direction of his lieutenant.

If the criterion between *trespass* and *case* be, as some of the *English* Judges have supposed, whether the act was lawful or unlawful, this action should be *case*, for the defendant, at the time, was in the exercise of a lawful right. If the criterion be, whether the act was *wilful* or not, the action ought to have been case, for the jury have negatived that the act was wilful. If the criterion be, the injury proceeding directly and immediately from the act of the defendant, then the action should have been *case*, and not trespass; for there was no act done by the defendant; and if. from the evidence, it appears, that putting the helm one way or the other, was the cause of the injury, the defendant was not at the helm; as regards him, therefore, the injury was not direct. The defendant gave an order to the helmsman to put the helm *a port*, but as that was not done, the vessels did not come in contact in consequence of that order. The injury, therefore, was not from the order of the defendant, and he cannot be liable in *trespass vi et armis ;* he could only be so, if he had ordered the helm *a port*, with *intent* to run down the plaintiff's vessel, and. that order had been obeyed ; but the jury have negatived any such intention. We are aware, that it has been decided, that if the injury arise from the *negligence* of the defendant, though it be immediate, the party injured has his election to treat the *negligence* of the defendant as the cause of action, and bring case, or to consider the act itself as the injury, and bring trespass. (*Blinn* v. *Campbell,* 14 *Johns. Rep.* 432. 1 *Chitty Pl.* 127.) This doctrine. that both actions will lie, where there is an immediate, and also a *consequential* injury, is stated by *Wedderburne, arguendo,* in the case of *Harker* v. *Birkbeck,* (3 *Burr. Rep.* 1561.) and that appears to be the origin of it as laid down in *Blinn* v. *Campbell,* which was an action for negligently firing a pistol, and wounding the plaintiff in the leg. No doubt, that where a *trespass* has been committed, a party may, in many cases, waive the trespass, and bring an action on the case; but he can have no right of election, where no trespass is committed. It is the act done which must control and give form to the action, and not the action to the act. No form of action can make that a trespass which was not so before ;

PERCIVAL
v.
HICKEY.

and we contend, that the defendant did not commit a tres-
pass.

2. Improper evidence was admitted.   Under the general
interrogatory, the witness cannot answer as to any new matter
not inquired about in the particular interrogatories.   If such
a practice were allowed, it would destroy the use of inter-
rogatories altogether, and be a surprise on the other party.
But, if admissible, the evidence was too loose and vague to
be allowed to go to a jury.

Again; the testimony of *Howard*, the mate, was inad-
missible.   He had not received his wages, and if the plain-
tiff should recover the value of the cargo, the witness would
be entitled to wages.

3. The evidence on the part of the defendant, was ad-
missible under the plea of *not guilty*.   (*Le Caux* v. *Eden*,
*Doug*. 594.)

4. The verdict was against evidence.   It was founded
on negligence only ; and if, from the evidence, it should
appear, that no negligence was attributable to the defend-
ant, the verdict ought to be set aside.   A judgment must
be formed from facts which took place on board of the *At-
alanta*, not from what appeared on board of the *Mary*.   For
it is only on board of the former vessel, that the witnesses could
know any facts as to the negligence of the defendant.   In
this view, the whole evidence of the mate of the *Mary* ought
to be rejected.   (Here the counsel examined and discussed
the evidence in the case.)

5. This court has no jurisdiction of the cause. It belongs
to the *Admiralty* Court.   It is an action against a belligerent
cruiser, for improper conduct, in the exercise of his right to
capture enemy's property, or to make search on board of a
neutral vessel, for enemy's property, under the law of nations.
The right of search grows entirely out of the law of nations.
This Court cannot decide on the rights of war.   It is not
competent to apply the law of nations to the case.   A bel-
ligerent has a right to search, and if the neutral resists, he
may be captured and condemned as prize of war.   How can
this Court say that the attempt of the plaintiff to elude the
right of search, and his conduct during the chase, did not
render him liable to capture and condemnation as prize ?
It appears from the case that the plaintiff himself consider

ed that his case was cognizable only in the Admiralty. He went to *England*, for the purpose of prosecuting the defendant, and commenced a suit against him in the High Court of Admiralty, and the mate says, that he was examined in that Court, as a witness in the cause. Surely, the plaintiff would not, as matter of choice, have applied to that Court; he must have been advised, that a Court of Common Law had no jurisdiction of his case. There are many cases of *marine trespass* to be met with in the books; but not a case can be found of an action at common law, against the commander of a belligerent vessel, for a *trespass*, in exercising the right of search. (*Le Caux* v. *Eden, per Buller, J. Doug.* 601.) Courts of Admiralty have jurisdiction of *marine trespasses*, and of all questions incident to prize. If a belligerent boards a vessel on the high seas, and finding she is a neutral, proceeds to plunder her, it is a case of admiralty jurisdiction. (*The Amiable Nancy*, 3 *Wheat. Rep.* 546 ) In *Novion* v. *Hallett*, (16 *Johns. Rep.* 327. *in Error.*) Chancellor *Kent* lays it down as an established principle, that a Court of Admiralty has exclusive jurisdiction, not only of all matters of prize, but of all incidental questions growing out of the question of prize. Are not the transactions which take place in attempting to make prize, as much incidental to the question of prize or no prize, as those which take place after a capture? Must not the conduct of the belligerent commander, in the one case as well as in the other, be judged of by the law of nations? Suppose, that in bringing a neutral to, for the purpose of search, the belligerent cruiser fires a gun into her, which does an injury, is that not a case of admiralty jurisdiction? In the case of *Faith* v. *Pearson*, (6 *Taunt.* 439.) a *British* cruiser boarded an *English* vessel, supposing her to be an *American*, and after detaining her until he was satisfied that she was not an *American*, he dismissed her. In an action of trespass brought against the commander of the ship of war, *Gibbs*, chief justice, nonsuited the plaintiff, saying, that according to *Le Caux* v. *Eden*, no action could be maintained for taking a vessel, where the captors were acting under a belief that she was a subject of prize; and the Court of C. B. refused to set aside the nonsuit. The true reason is given by Chief Justice *Lee*, in *Key*

ALBANY,
August, 1820.

PERCIVAL
v.
HICKEY.

*& Hubbard* v. *Pearse,* (*Doug.* 606.) that prizes are acquisitions *jure belli* and *jus belli* is to be determined by the law of nations, not by the municipal law of a particular country.

*T. A. Emmet,* and *H. Sedgwick,* contra. 1. As to the form of the action. This question has been very fully examined in the case of *Scott* v. *Shepherd.* (2 *Wm. Bl.* 392. 3 *Wils.* 403.) *Gould,* J. said, the line was very nice between case and trespass; and he thought there were many cases where both or either would lie. In *Starr* v. *Jackson,* (11 *Mass. Rep.* 521.) Ch. J. *Parker* observed, that "originally, it would certainly have been immaterial whether the damages should be settled by an action of trespass or an action on the case: the wrong being direct and immediate to the property damnified, both actions being founded in *tort,* and the plea to each being the same, as is also the principle on which the damages would be ascertained." In *Slater* v. *Baker,* (2 *Wils.* 362.) the court said, " That the plaintiff ought to receive satisfaction, for the injury was admitted; and the Court would not look with eagle's eyes to see whether the evidence applied exactly or not to the case; when they saw that the plaintiff had obtained a verdict for such damages as he deserved, they would establish such verdict, if possible." In *Leame* v. *Bray,* (3 *East's Rep.* 593.) *Lawrence,* J. said, that " it was more convenient that the action should be trespass than case; because if it be laid in trespass, no nice points can arise upon the evidence, by which the plaintiff may be turned round upon the form of action, as there may, in many cases, if case be brought; for there, if any of the witnesses should say, that in his belief the defendant did the injury wilfully, the plaintiff will run the risk of being nonsuited." In an action of trespass *vi et armis,* which is what is called a *formed action,* and the writ for which is found in the *Register,* the declaration would be good, without alledging that the act was done wilfully or negligently; and the precedent for the declaration in this case was found in *Thompson's Entries,* p. 251. If, then, the facts averred in the declaration are sufficient to maintain an action, and if all those facts are proved at the trial, surely the action cannot be defeated by the proof of other things

done by the defendant, which do not amount to a perfect justification, so as to take away *all* right of action. If the plaintiff proves all the facts alledged in his declaration, how can he be nonsuited? How can the defendant say that he was not guilty of those acts, because he can prove a *negligence*, perfectly consistent with them, and in itself injurious and unlawful ? If *wilfulness* entitles the plaintiff to bring *trespass*, and *negligence* compels him to bring *case*, then *wilfulness* and *negligence* are the *gist* of the respective actions ; and every action of trespass *vi et armis*, which does not aver that the act was *wilfully* done, would be bad on general demurrer, which is contrary to every day's experience. Besides, if *wilfulness* is the *gist* of the one action, and *negligence* of the other, what becomes of all those immediate and forcible injuries, which are not *intentional*, but *accidental ?* What becomes of the *consequential* injuries which are wilful ? If wilfulness does not enter into the *gist* of the action of trespass *vi et armis*, and it consists in the *force* and *directness* of the injury, the proof or no proof of wilfulness, can only affect the quantum of damages. *Chitty*, (1 *Chitty Pl.* 122.) lays down the rule, that " if the injury be *forcible*, and occasioned *immediately* by the act of the defendant, *trespass vi et armis* is the proper remedy ; but if the injury be not, in legal contemplation, *forcible*, or not *direct* and *immediate* on the act done, but only *consequential*, then the remedy is by *an action on the case.*" Here, then, is a broad and clear line of distinction, for the guide of the party and the pleader. It makes no difference that the injury was unintentional and the act lawful. (1 *Chitty Pl.* 128, 129. 27 *Hen.* VII. 28 *a.* *Hob.* 134. 1 *Str.* 593, 634. 3 *East. Rep.* 593, 600. 1 *Esp. N. P. Rep.* 55. 2 *Hen. & Mun.* 423. 14 *Johns. Rep.* 432.) It being, then, the undoubted and settled rule, from the *year-books* down to the present time, that where the injury is *immediate and forcible*, trespass is the proper action, whether that injury be accidental, negligent, or wilful, it is surprising that any diversity of opinion should exist on the subject, or that any difficulties should have arisen from the circumstance of a ship or carriage being in motion at the time of the injury. In *Leame* v. *Bray*, (3 *East*, 593, 601.) *Le*

*Blanc*, J. says, that " in'actions for running down ships at sea, difficulties may occur; because the *force* which occasions the injury, is not immediate from the act of the person steering. The immediate agents of the force are the wind and waves, and the personal act of the party rather consists in putting the vessel in the way to be acted upon." From this it would seem, that *wilfulness* was evidence that the injury was the *immediate* act of the party, and that *negligence* might be evidence, that it did not arise from his immediate act, but from some operation of the wind and waves, in which he did not participate. Such appears to have been the case of *Ogle* v. *Barnes*, (8 *Tem.* 188.) Lord *Ellenborough*, in *Leame* v. *Bray*, speaking of that case, says, " that it did not appear that it was the personal act of the defendants, or that they were on board of the ship at the time." But though negligence may, sometimes, concur to show that the injury did not result from the immediate act of the defendant, yet, neither in fact or law, will it always do so, nor is it a safe criterion on this point. It is admitted that if the running foul be *wilful*, trespass is the only action. Why? Because the motion the defendant intended to give to the ship, whether given by his act or orders, shall be considered as given by him, through the instrumentality of the winds and waves, which science has enabled him to use as propelling powers. Suppose, then, the motion so designedly impressed on the ship, by the act or orders of the defendant, to be continued, and that his *negligence* consisted in not taking due precaution to prevent the plaintiff's vessel from sustaining injury by the motion, or force impressed on the ship, would not the injury sustained be as directly and immediately the result of the force and motion impressed on the ship, as in the case of design? Indeed, if the injury could not be considered as the immediate act of the defendant, because " the immediate agents are the wind and waves," it would be very difficult to support an action for a forcible personal injury, not inflicted by the personal strength of the defendant; as when a person fires a gun or pistol, and the gun-powder and spark are the immediate agents. The law would, also, be different as to vessels propelled by steam, or by wind and waves. The maxim is,

*quia facit per alium, facit per se,* " He who orders an act, ALBANY,
from which a forcible injury directly follows, is a trespas- August, 1820.
ser." (1 *Lord Raym.* 39.   *Salk.* 613.   3 *Wils.* 403.)  In   PERCIVAL
*Cole* v. *Fisher,* (11 *Mass. Rep.* 137.) the defendant, by dis-   HICKEY.
charging a gun, frightened the plaintiff's horse, who ran
away and broke the carriage of the plaintiff, and trespass
was held to be the proper remedy.  In *Cotell* v. *Leaming,*
(1 *Campb. N. P. Rep.* 497.) Lord *Ellenborough* said, that he
could never understand the grounds of the difficulties which
had been raised on the subject.  That his opinion was al-
ways uniform, that the only just and intelligible criterion
was, whether the injury complained of arose directly, or
followed consequentially, from the act of the defendant.
" If, in the dark," he observes, " I ignorantly ride against
another man on horseback, this is undoubtedly a trespass,
although I was not aware of his presence, until we came in
contact.  It makes no difference that here were parties sail-
ing on ship board.  The defendant was at the helm, and
guided the motions of his vessel.  The winds and the waves
were only instrumental in carrying her along, in the direc-
tion which he communicated.  The force, therefore, pro-
ceeded from him, and the injury of which the plaintiff com-
plained, was the immediate effect of that force."  The law
must be the same for ships and carriages.  In the case of
*Leame* v. *Bray,* where the accident arose from the darkness
of the night, the defendant was no otherwise blameable than
for driving on the wrong side of the road.  If he had been
on the right side of the road, and had driven his carriage
against that of the plaintiff at rest, would not the action have
been *trespass?* (*Day* v. *Edwards,* 5 *Term Rep.* 618.  *Sa-
vignac* v. *Roome,* 6 *Term Rep.* 125.  *M'Manus* v. *Cricket,*
1 *East Rep.* 106.)  The whole doctrine was fully discussed
in *Leame* v. *Bray,* which has never been over-ruled, though
Sir *James Mansfield,* in *Rogers* v. *Imbleton,* (5 *Bos. & Pull.*
117.) intimated some doubt as to it. (5 *Bos. and Pull.* 446.)
The most that can be made of the decision of the C. P. is,
that an action on the case will lie; and *Chitty* cites it in
support of the position, that where the injury is attributa-
ble to negligence merely, the party has his election to bring
case or trespass.  Lord *Ellenborough,* in the case which

has been cited, alludes to the difference of opinion, and expresses his own opinion, in strong terms, and it has been acquiesced in. (*Lotan* v. *Cross,* 2 *Camp. N. P. Rep.* 464. 11 *Mass. Rep.* 59. 2 *Lord Raym.* 1032. 2 *Maule* v. *Selwyn,* 77. 1 *Johns. Rep.* 511. 3 *Johns. Rep.* 466.)

2. As to the objection to the answers of *Parker & Dodd;* they were examined as to the value of the vessel and cargo, on the 10th interrogatory, and they were asked, under the 13th interrogatory, as to " what cargo was on board." There could be no surprise on the adverse party. The interrogatories were sufficient to apprise them of the nature and object of the evidence sought; but this objection comes too late, and ought not to be favoured, especially as the defendant has not shown that he has, in fact, been surprised, or that there has been any mistake in the evidence.

As to the mate's evidence; he was not interested. By the loss of the freight, his wages were lost; though the plaintiff should recover damages for the loss of his property, it would give the seamen no right to an action for their wages.

3. Under the plea of *not guilty,* the defendant cannot give in evidence any matter of justification. That must be specially pleaded and put upon the record. (*Milman* v. *Dolwell, Knapp* v. *Salsbury,* 2 *Campb. N. P. Rep.* 378. 500.)

4. It is objected, that the verdict is against evidence. There was evidence on both sides, and the court will not send the cause to another jury, unless in a very strong and palpable case. The belligerent is bound to exercise his right of search, in such a manner, as not to injure the neutral. (2 *Azuni Mar. L.* 202.) (Here the counsel entered into an examination of the evidence detailed in the case.)

5. As to the jurisdiction of the Court: a confusion is created by using the expression " Court of Admiralty," in an equivocal sense. In *England,* the Court of Admiralty consists of two Courts; the *instance* Court, and the *prize* Court : The former is governed by the civil law, the laws of *Oleron* and the Customs of the Admiralty, modified by statute : The latter decides according to the law of nations, and the course of the admiralty. (2 *Bro. Civ. & Adm. L.* 29. 34. 43. 123. *Godolph. Adm. Juris.* 40.) The *Instance*

Court of *England* does not decide according to the common law, or the law of nations, but according to its own peculiar code. It has cognisance of matters concerning shipping, the powers, rights and duties of persons employed in ships, and of the *torts* committed by or upon them, or damages done to ships. These matters are inquired into, and decided in the *instance* Court of Admiralty, not because they have any connection with the law of nations, but because they are injuries against persons or property, for which this Court, like a court of common law, has provided remedies. Neither the *instance* Court of Admiralty, nor a common law court, institute actions founded on the law of nations; though both of them do not hesitate to discuss and decide on that law, when it incidentally comes before them, as matter of defence, or as limiting the rights and claims of the plaintiff. The cases which have arisen on policies of insurance, show that this Court will examine into the law of nations. (1 *Johns. Cases*, 363. 1 *Caines' Rep.* 60.) So, in *Tabbs* v. *Bendelack*, (3 *Bos. & Pull.* 207. note,) the court decided an important question on the law of nations; that in regard to *neutrality*, a man is not considered as belonging to the country of his birth or adoption, but to the place of his *domicil* at the time. By the municipal law, a man is a citizen or subject of that country only, in which he was born or is naturalized. By the law of nations, he is deemed a citizen of the country in which he resides. So when this court decided the case of *Wheelwright* v. *Depeyster*, (1 *Johns. Rep.* 471.) they determined an important question of the law of nations; and the District Court of South Carolina, and the Supreme Court of the *United States*, when they decided the same question differently in *Rose* v. *Himely*, (4 *Cranch*, 241.) were acting not as *prize* courts, but as instance courts. So, in the case of *Griswold* v. *Waddington*, (15 *Johns. Rep.* 57. S. C. 16 *Johns. Rep.* 438.) this Court and the Court of Errors decided according to the law of nations, that all contracts between enemies were void. Almost all the authorities cited were taken from the decisions of the prize courts. In *Bell* v. *Potts*, (8 *Term Rep.* 548.) the Court of K. B. directed the cause to be argued by *civilians*, because it was a question of the law of nations. When

this Court, in *Goodrich* v. *Gordon*, decided, that a *ransom bill* was a valid contract, their decision was founded on the law of nations. So, in *Saloucci* v. *Johnson*, (*Park on Ins.* 498.) the Court of K. B. decided, that a neutral, by the law of nations, was not bound to submit to the right of search. Indeed, the books are full of cases, in which the courts of common law examine and decide on questions incidentally arising on international law, as well as the laws of foreign countries, though they will not entertain an action founded on those laws, except in the case of a *ransom*, which, in truth, is an anomaly. It is not, therefore, correct to say, that whenever the Court perceives, that the case must be decided by the law of nations, it ceases to have jurisdiction.

It may be supposed, that as the defendant was an officer commanding a national ship, acting under a public commission, the matter may partake of a national concern, and the suit ought, therefore, to have been brought in a Court of the *United States*, either of admiralty or common law jurisdiction; but if it had been brought in such a Court, it would still have been tried by the same law as in this Court. But there is nothing in the supposition, that a state Court has not equal cognizance of the case. It is a *personal tort*, not a national question. It is the defendant himself who must answer for his-conduct, not his government. *Vattel* (*Liv.* 2. ch. 6. s. 73, 74.) says, that such acts of individuals are not to be imputed to the nation, unless it approves of, or ratifies them. If the offender is within the power of the state offended, he may be laid hold of, and compelled to do justice. (*Id.* s. 75.) If this be the doctrine in *criminal* cases, *a fortiori*, it must be so, in regard to civil injuries.

Again; this objection, as to the jurisdiction of the Court, comes too late. Independent of the question of prize or not, any question arising which involves the law of nations, and which is to be matter of defence, or an exception to the jurisdiction, ought to be specially pleaded. It is too late, after a plea in bar, to object to the jurisdiction of the Court. (*Smith* v. *Elder*, 3 *Johns. Rep.* 105. *Cowp.* 72. *Doug.* 611.) Taking goods as prize is, *prima facie*, exercising a lawful right. This is not the case of the law-

ful exercise of the right of search; but is, *prima facie*, a tort, for running down the plaintiff's vessel on the high seas, and any matter of justification should be specially pleaded. It will not be denied that this Court has jurisdiction of a *marine* trespass. (*Hallet* v. *Novion*, 14 *Johns. Rep.* 273.) In *Le Caux* v. *Eden*, (*Doug. Rep.* 614. note.) Lord *Mansfield* says, " a thing being done on the high seas does not exclude the jurisdiction of the Courts of common law. For seizing, stopping, or taking a ship, upon the high seas, not as prize, an action will lie; but for taking *as prize*, no action will lie. The nature of the question excludes; not the locality." To take away the jurisdiction of the common law Court, it must be either a question of *prize*, or such a taking or act as gives the one party a right to compel the other to treat it as prize. Whatever excludes the jurisdiction of a Court of common law, excludes, also, that of the *Instance* Court of Admiralty. This shows the importance of keeping in view the marked distinction, as to jurisdiction, between the *Instance Court* and *Prize* Court. Again; if this is a case which can be tried only in a *Prize* Court, it can be tried only in the Court of the *captor.* Though this doctrine has been much disputed, it is now finally settled by the Supreme Court of the *United States*, in the case of the *Invincible.* (1 *Wheat. Rep.* 233.) Then, what is the extent of the surrender of jurisdiction demanded of the plaintiff? If he cannot obtain justice here, he can look for it no where, but in a *British Prize Court.* If the sovereign of the captor has a right to consult his own dignity in requiring all questions of war to be decided in his own Courts of Admiralty, the Courts of this country have duties to perform, and are bound to protect their own citizens. Then what can a *British Prize* Court try? It derives all its authority from its *commission,* by which it is authorized " to proceed upon all, and all manner of captures, seizures, prizes, and reprisals of all ships or goods that are, or shall be taken;" and the *monition,* in setting forth the Judge's authority, adds what may be called his consequential jurisdiction; " and, also, to hear and determine all, and all manner of causes and complaints, as to ships and goods, seized and taken as prize, specially constituted and appointed."

ALBANY,
August, 1820.

PERCIVAL
v.
HICKEY.

(*Doug.* 614. 2 *Brown's Civil and Adm. Law*, 209, 210.) Whatever does not come within the words of this commission, is not cognizable in a Prize Court. But, it is said, this was a *capture*, and that the plaintiff attempted to elude the right of search. To constitute a capture, there must be *a taking of possession.* The plaintiff had ceased all effort to escape ; his vessel was lying to, ready to submit to the search of the defendant. It must be the exercise of the hostile right of capture, to give jurisdiction to a *Prize* Court. Suppose that no accident had happened, and the defendant, after exercising his right of search, had dismissed the plaintiff's vessel, would this be a capture, or an acquisition of property, *jure belli?* Suppose, that during the search the defendant had struck the plaintiff : must the plaintiff have sought his remedy for this personal injury in a *Prize* Court ? True, if the plaintiff's vessel had been carried in, as prize, or for adjudication, perhaps, in that case, the personal *tort,* as incident to the capture, might be tried in that Court. Prize or no prize, says Lord *Mansfield,* is the boundary line. (*Doug. Rep.* 615.) For *prizes,* are *acquisitions jure belli.* The right of search is not a *jus belli.* *Grotius* no where treats of the right of search as among the *jura belli.* The *jura belli* are laws regulating, controlling and systematising the carrying on of hostilities between *enemies.* They exist only between parties at war with each other. The right of search exists between a belligerent and a neutral, or parties not hostile to each other, and is founded on treaties, on the customary and conventional law of nations, for the preservation of peace and amity. In *Le Caux* v. *Eden,* it was doubted by respectable lawyers, whether Courts of Admiralty had exclusive jurisdiction as to questions incident to a capture. But, now, that question is, perhaps, too well settled to be again controverted. It is true, that Prize Courts have given damages, in certain cases, for personal *torts,* but these were cases of injuries arising during, or after the capture. And, in all cases, we believe, those who have commissions give security for their good behaviour. Where there is no *capture,* the only remedy for the injury, in an Admiralty Court, is in the *Instance* Court. The case of the *Amiable Nancy,* (3 *Wheat. Rep.* 546.) has been cited. That was

ALBANY,
August, 1820.

PERCIVAL
v.
HICKEY.

clearly a case of *instance* jurisdiction. In the District Courts of the *United States*, the *prize* and *instance* jurisdiction are blended together. There is no form by which to distinguish them. They are only known by the subject matter. The proceedings in the case cited, were those of an Instance Court. There were no examinations in *præparatorio*. *Roux* filed his libel as an original suit, and brought in his adversaries to answer.

Again : it is argued that the plaintiff sued for redress in the *British* Court of Admiralty; but it was in the *Instance* Court, and that Court entertaining the suit, shows that it was not a *prize* question. If he had gone to the *prize* court, he would have been told, " we have no jurisdiction ; for here is no capture, seizure, or prize. So far from being the only Court that can afford you redress, it is, perhaps, the only Court in the world that cannot take cognizance of your case. Foreign Courts of Admiralty have their prize and instance courts blended together, as in your own country. Here the jurisdiction of the *prize* Court is special and distinct." (*Vide Mostyn* v. *Fabrigas, Cowp.* 161. *Greenwood* v. *Curtiss,* 6 *Mass. Rep.* 358. 2 *Wheat. Rep Appendix,* No. 1. 1 *Madd. Rep.* 15. 1 *Rob.* 287. 4 *Rob.* 408. 3 *Dallas,* 6. 159. 2 *Cranch.* 170.)

*Wells,* in reply. Originally, actions of trespass were laid *vi et armis et contra pacem,* for an individual wrong, involving not only the private injury, but the public peace ; and besides the *damages,* a *fine* to the king was imposed, and the defendant was imprisoned until both were paid. These actions were among the *brevia formata* found in the *Register.* Afterwards, under the authority of the statute of *West.* 2. actions of *trespass on the case* were introduced. These new writs in case, were laid *vi et armis et contra pacem,* or not, according to the circumstances of the particular case. The true criterion was, whether there was a *breach of the peace,* or not ; and not whether the injury was *direct* or *consequential.* This distinction is of later date, and is first mentioned in *Fitzherbert, Nat. Brev.* So that, according to the old rule, neither *trespass,* nor trespass on the case, *vi et armis et contra pacem,* could be brought in a case, like the present, for

an injury committed on the high seas, because it could not involve *a breach of the peace of the realm.* This, of itself, shows, that the common law Courts could not, originally, have jurisdiction of marine trespasses. They belonged exclusively to the Admiralty, whose jurisdiction has been since usurped. It is "difficult to sustain upon principle, although not upon authority," says Judge *Story,* " that trespass will lie, at common law, for a marine tort on the high seas." (*Maisonnaire* v. *Keating,* 2 *Gall.* 342.) It is too late, however, now to draw this usurpation into question. Time has sanctioned it. But if the act, charged to be a trespass, is a seizure, or stopping as prize, the Admiralty still retains its original exclusive jurisdiction. That this is the real character of the alleged trespass in this case, will hereafter be shown ; but, for the present, supposing a cause of action to exist at common law, it is contended, that an action on the case, not trespass, would lie.

Trespass cannot be maintained, unless the act complained of was *wilful,* or the injury was caused by direct force, produced by the agency of the party complained of. Now, on neither principle can the present suit be maintained. It was avowedly brought on the ground of being a *wilful act,* and evidence was introduced on the trial for the purpose of proving it to be so ; but the jury have negatived its being *wilful,* and have ascribed the injury entirely to negligence, for which, *case* is the proper remedy.

In *Beckwith* v. *Shoredike* and others, (4 *Burr. Rep.* 2092.) it was left to the jury to say, whether the trespass was *intentional,* or only a mere *involuntary accident ;* and the Court of *K. B.* recognised the distinction between a mere accidental, involuntary trespass, and one wilful or voluntary ; and said, that the former was not a cause of action, though Lord *Ellenborough* is made to say, in *Leame* v. *Bray,* that he did not find the dictinction laid down in any of the cases, that in order to maintain trespass, the act must be *wilful.* In *Savignac* v. *Roome,* (6 *Term Rep.* 128.) the action was *case,* for, *wilfully* (by the defendant's servant) driving against the plaintiff's carriage, and the judgment was arrested, because, the act being *wilful,* the plaintiff should have brought *trespass vi et armis.* So, in *Tripe* v. *Pot-*

*ter*, cited in that case, which was an action on the case, for *wilfully* rowing a boat against the plaintiff's, he was non-suited for the same reason. In *Ogle* v. *Barnes*, (8 *Term Rep.* 188.) the action was *case*, for running foul of the plaintiff's vessel, and a motion in arrest was made, because it should have been *trespass*; but the motion was denied, as the charge was, that the injury was caused by the *negligence* of the defendant. All the judges said, that if the running foul had been wilful, trespass would be the proper remedy. The case of *Nicholson* v. *Mouncey*, (15 *East*, 384.) was, in all respects, like the present, except as to the question of prize; yet that was an action on the case. In *Leame* v. *Bray*, (3 *East*, 593.) the principle that *wilfulness* was essential to maintain trespass seems first to have been departed from; for in *Shepherd* v. *Scott*, the act was *unlawful* in itself, and was, besides, in its origin, *wilful*. In *Leame* v. *Bray*, too, both the Court and the counsel distinguish it from the case of a *collision of vessels*, where, it seems to be admitted, the remedy should be *case*. It is conceded, also, in that case, that the only instance to be found in the books, where it was held that an action of trespass for running down a vessel would lie, was that of *Tripe* v. *Potter*, in which the act was alleged to be *wilful*. *Hugget* v. *Montgomery* was an action of trespass *vi et armis*; and the orders were given by the *pilot* who had charge of the defendant's vessel. *Rogers* v. *Imbleton* was an action on the case, and there was a demurrer, for that it should have been trespass; but the demurrer was overruled. In these two cases, the Court doubted the authority of *Leame* v. *Bray*. In *Webb* v. *Drake*, referred to in *East*, 384. and in *Bowcher* v. *Novidstrom*, (1 *Taunt.* 568.) the act was *case*, for running foul of the plaintiff's vessel; yet the injury was the consequence of the order given by the captain. In the latter case, the action, it is true, was *trespass*, but the act complained of was *wilful*, in cutting away the mainsail of the plaintiff's vessel. *Fetteplace and others* v. *Braddick and others*, (5 *Bos. & Pull.* 182.) and *Bennett* v. *Morta*, (1 *Holt's N. P. Rep.* 359.) were *actions on the case*, for running foul of the plaintiff's vessel. Thus, it appears, that the intention or wilfulness of the act was, at one time, at least, the

criterion by which to determine, whether it was trespass or not; and it is to be regretted that it has been departed from, because it is the most natural and simple.

Again; in order to maintain trespass, it is necessary, according to the cases, in which that of *Leame* v. *Bray* takes the lead, that the act of the party complained of must be with *force*, and the *immediate* cause of the injury. The defendant, however, in the present case, did no act whatever. He merely ordered the helm *a port*, but before the order was executed, the accident happened; so that it was not occasioned by any act or order of the defendant. If the defendant, then, is to be held liable, in this form of action, it *is not for any act done by him*; but, according to the finding of the jury, for the omission of duty on the part of his officers, or for *negligence* and want of due care, which are of the very essence of an action on the case.

2. It was, also, a ground of defence, that the loss of the *Mary* was an *inevitable accident*, and, therefore, trespass would not lie. The evidence went to the very charge, and was admissible under the general issue. In answer to what is said by Lord *Ellenborough* in *Covell* v. *Leaming*, we may appeal to the opinion of Lord *Mansfield*, in *Beckwith* v. *Shoredike*, that an involuntary trespass is not a cause of action, and to the good sense of the rules of pleading. The evidence, at all events, was admissible to show the character of the transaction, and that it was a taking *as prize*; for trespass, at common law, will not lie in such a case. " Upon the general plea of not guilty," says Mr. J. *Buller*, " no action can be maintained where the question relates to prize." (*Le Caux* v. *Eden*, Doug. Rep. 594 and the cases cited in the note, especially *Livingston & Welch* v. *M'Kenzie. Faith* v. *Pearson*, 6 Taunt. Rep. 439.)

3. The verdict was against evidence. Here the counsel examined the evidence very minutely, and urged, that the principal witness of the plaintiff was contradicted in some of the material parts of his evidence; but that all the witnesses agreed, that the collision took place soon after the *Atalanta* wore. The *Atalanta*, standing on her larboard tack, passed the *Mary*, who was to windward, standing on the same tack. Shortly after, the *Atalanta* attempted to

tack, in order to fetch the *Mary*, but being unable to do so, she wore and fell to leeward. Now, if the *Mary* had continued the tack she was on, when the *Atalanta* passed her, the accident could not have happened. The defendant did not even know, that the *Mary* had hove to, and he must have supposed her, when his own ship wore, still standing on the tack, on which she was when he passed her. The *Mary* saw the *Atalanta*, and should have taken care to avoid her. The fault was on her side, for she had the wind. If she was lying to when the *Atalanta* passed her, why did she not continue in the same position? Why did she change her tack, which alone was the cause of the collision. The result of the evidence is, that the defendant might have hove to while there was day light; that both vessels wore, without either knowing that the other had done so. The difference of position, which was the necessary consequence, the darkness of the night, and both vessels putting their helms up at the same time, sufficiently account for the accident, without imputing any fault, or negligence to the defendant. It is clearly a case of *accidental collision*, or a casual misfortune, arising from mutual mistake, which has produced a mutual loss, for which neither party ought to be made responsible to the other.

4. As to the jurisdiction of the Court: It is not pretended on the part of the defendant, that the *Instance* Court of Admiralty had cognizance of the case, and the proceedings by the plaintiff in the Court of Admiralty, which were offered in evidence, and rejected by the Judge, show, that it was the *prize*, and not the *instance* side of the Court in which they were instituted. Indeed, the *Prize* Court only could entertain the suit. (*The George*, 3 *Rob.* 211.) The learned counsel, therefore, might have spared the labour of pointing out the distinction between the two Courts, of which we were perfectly aware, as well as of the one which could alone be resorted to in a case of this kind. Courts of common law, no doubt, take notice of the law of nations, on questions arising incidentally, where the cause of action is of municipal origin; but it seems to be admitted by the plaintiff's counsel, that if the cause of action arises under the law of nations, the suit must be in the Admiralty Court.

This principle is clearly established in *Anthon* v. *Fisher*, (*Doug*. *Rep*. 648 note to *Cornu* v. *Blackburn*,) which was a case on a *ransom* bill, and the judgment of the Court of K. B. was reversed, in error, on the ground, that it being an action arising under the law of nations, a Court of common law had no jurisdiction. The same principle is recognized in *Maissonaire* v. *Keating*. (2 *Gallis*. *Rep*. 341, 342.) This is not a case of a marine trespass, but a pursuing, stopping, and detaining, by a belligerent as prize. The evidence, on both sides, agrees in showing, that the disaster in question arose out of the exercise of a belligerent right. The object, in the first instance, was search, and sending in for adjudication, if the search should warrant it. In *Lindo* v. *Rodney*, (*Doug*. *Rep*. 613.) Lord *Mansfield* lays down the distinction, with his usual clearness. " For seizing, stopping, or taking a ship on the high seas, *not as prize*, an action will lie." Such has been the doctrine of the *English* Courts, from *Le Caux* v. *Eden*, to *Faith* v. *Pearson*. (4 *Campb*. *N. P*. *Rep*. 457. 6 *Taunt*. *Rep*. 439.) The cause of action, if any, was pursuing and stopping the *Mary* for search, and with a view to *prize*, and arose out of the law of nations. The belligerent right of search does not belong to the municipal law. The plaintiff's vessel was chased as an enemy, or, at least, with a view to search for enemy's property. The exercise of this right of search leads to the capturing of neutral vessels, and carrying them in, for adjudication, in the Prize Courts of the belligerent. (*The Maria*, 1 *Rob*. 340. *The St. Jean Baptista*, 5 *Rob*. 33.) The defendant, independent of his commission, would have been a trespasser, in chasing the *Mary*. He had no right to chase, but under the law of nations. It is true, that the belligerent must exercise his right of search, according to the law of nations, otherwise he is responsible for damages. But in what Court is the injured party to seek redress? We answer, in a Court of the Law of Nations, because it is that law which is violated, and the tribunals which are erected under it, are alone competent to punish the offender, and to redress the injured. But it has been said, with a sneer, that if this Court does not take cog-

nizance of the case, the plaintiff must be driven to seek justice in a *British* Court of Admiralty. If this Court has no jurisdiction, it will leave the plaintiff to seek his remedy in what other tribunal he may, as was done in the case of *Novion* v. *Hallett* in the Court of Errors. (16 *Johns. Rep.* 323.) It is the *quo animo*, with which the plaintiff's vessel was chased and stopped, that fixes the character of the transaction, and assigns jurisdiction to the Court, to which it belongs to inquire into the conduct of the pursuer and captor, and to acquit or punish him, according to the circumstances of the case. If the defendant has violated any law, it is the law of nations, by abusing a right given to him by that law, and exercisable only under that law. It is an acknowledged principle, that " if a Court has no jurisdiction of the principal question, it has none of its consequences and incidents." (*Case of Ferguson*, 9 *Johns. Rep.* 239. 241.) Now, what was the principal question in this case? Prize or no prize? To be determined, in the first instance, by *search*. The moment the *Atalanta* commenced her pursuit of the *Mary*, she acted under a belligerent right, for the due exercise of which, the defendant was answerable only in a Prize Court. The right of chase is founded on a public or private *commission* from the government, the validity of which may be drawn in question, and can only be examined in a Prize Court. It is said, that here was no taking as prize. But the *Mary* was pursued for the purpose of capture as prize, and was brought to, as such; though, before she could be boarded, the accident happened. What led to this accident? The chasing for the purpose of seizure or search. Suppose, after being detained and searched by the defendant, the *Mary* had been dismissed, will it be pretended, that the defendant would have been liable to an action of trespass? If there be any irregularity in the exercise of this right, must not the Court which has jurisdiction of the principal matter, have cognizance, also, of this as an incident? How, otherwise, is the line of separation to be drawn between the jurisdiction of the Courts of common law, and Admiralty? Suppose, she had been taken possession of, and lost by the negligence of the captors, it will not be pretended, that trespass would lie, or that

ALBANY, August, 1820.

PERCIVAL v HICKEY.

the admiralty would not have jurisdiction? And suppose
an irregularity before capture, is a Court of common law
to have jurisdiction of that, and the Admiralty Court of the
subsequent seizure? If the misconduct of the captor, after
capture, cannot oust the Admiralty of its jurisdiction, it
is not easy to see how any misconduct connected with the
taking can have that effect. If the *Mary* had been actually
taken possession of as prize, then it must be conceded, that no
action would lie, whatever might have been the misconduct
of the defendant; but recourse must have been had to the
Admiralty alone. Yet, it is urged, on the other side, that
if there be misconduct in the act of taking, or attempting
to take possession as prize, the aggrieved party may resort
to a common law Court. Can jurisdiction be separated by
such imaginary boundaries? The whole belongs to a com-
mon law Court, or to the Admiralty. As the entire proceed-
ing related to a matter of prize, the Court of Admiralty
must embrace the whole subject. Again; suppose the *Mary*
had been an enemy, or was carrying contraband of war,
she would have been lawful prize of war, and no action
could have been maintained for taking or sinking her vo-
luntarily; consequently, no action could lie for sinking her,
through negligence. Thus, the question of prize or no
prize, springs out of the transaction, in whatever light it be
viewed. "If," says Mr. Justice *Story*, in the case already
cited, "a question of *prize* be necessarily involved in the
foundation of an action, whether it be a principal or an in-
cident, I shall be glad to learn how the common law can
draw it *ad aliud examen*, than the prize jurisdiction." The
*English* cases on this subject are all collected, and the doc-
trine which they contain, so fully and learnedly examined
by his Honour, the Chancellor, in the opinion delivered by
him in the case of *Novion* v. *Hallett*, in the Court of Errors,
that it would be useless to attempt to add any thing to the
weight and authority of that opinion.

The argument, thus far, has proceeded on the ground
that the *Mary* was only pursued and stopped, but not taken.
It remains to show, that she was, in effect, captured. The
*Mary* had *hove to*, and submitted, as much as if, being an
enemy, she had struck her colours. She was under the

control of the defendant, and it is for an injury received while within his power, that this action is brought. It was equivalent to an actual or hostile capture, In the case of *The Rebeckah*, (1 *Rob*. 227. 233.) Sir *William Scott* says, " the first question that will occur, applies to the time of the capture, whether that is to be dated from the actual taking of possession, or the previous striking of the colours; and, I think, that the striking of the colours is to be deemed the real *deditio*." Here, then, the heaving to was equivalent to the striking of colours, and was such a capture as gave jurisdiction to the Court of Admiralty; and that Court has competent power to afford full and adequate relief, not only in regard to the property of all persons on board, but for any personal injuries alleged.

It only remains to show, that the Prize Court of Admiralty in *England*, does take cognizance of cases of this kind, and that it is competent to afford full and adequate relief. In the language of Ch. J. *Willes*, " if there is a remedy in the Admiralty Court, that is sufficient."

Where property is taken as prize, and not libelled, or is libelled irregularly, or is lost by the negligence or misconduct of the captor, proceedings may be instituted in the Admiralty to compel him to proceed to adjudication, and in default of which he will be decreed to pay the value of the property, and all damages. (*The Betsey*, 1 *Rob*. 93. *The Corier Maritimo*, 1 *Rob*. 287. *The Huldah*, 3 *Rob*. 335. *The Karason*, 5 *Rob*. 291. *The William*, 6 *Rob*. 316. *The Susannah*, 6 *Rob*. 48. *The Der Mohr*, 3 *Rob*. 129 4 *Rob*. 314. *The Lucy*, 3 *Rob*. 208. *The William*, 4 *Rob*. 214.) These cases point out the remedy that should have been pursued, in this case, by the plaintiff, if the injury of which he complains, really existed. This Court cannot afford him relief, without assuming a jurisdiction that does not belong to it.

SPENCER, Ch. J. The verdict of the jury was for the plaintiff; and agreeably to an intimation from the judge, that if they found for the plaintiff, they should state the grounds of their verdict, they added, *that the disaster was the result of gross negligence in the defendant.* Among the

ALBANY,
August, 1820.

PERCIVAL
v
HICKEY.

points taken, on the motion for a new trial, it has been stre-
nuously urged by the defendant's counsel, that the action
should have been *case* and not trespass. This point is open
to the defendant, because in the progress of the trial, a mo-
tion was made for a nonsuit, after the plaintiff had gone
through with his evidence, on that ground.

We must consider, after the finding of the jury, that the
injury done, by running down the plaintiff's vessel, was not
designed, or intentional; but that it proceeded from the de-
fendant's negligence, as captain and commanding officer of
the *Atalanta*. We are bound, also, to consider the negli-
gence as a personal one, imputable to the acts and omissions
of the defendant; and that these acts and omissions were
gross and palpable.

That the force by which the plaintiff's vessel was destroy-
ed, was the immediate cause of her destruction, proceeding
from the collision, cannot be doubted; and then the ques-
tion arises, whether, if such an act, producing the injury im-
mediately and directly, be the result of negligence, and not
of a wilful intention, the action ought to be trespass or case.
In the case of *Leame* v. *Bray*, (3 *East*, 593.) all the authori-
ties and preceding cases bearing on this question, were re-
viewed. That was trespass, charging the defendant with
having drove and struck a single horse chaise which the de-
fendant was driving along the highway, with such great force
and violence upon and against the plaintiff's curricle, which
his servant was driving, that by means thereof, the servant
was thrown out, and the horses ran away with the curricle;
and the plaintiff, to preserve his life, jumped and fell from
the same, and fractured his collar bone. It appeared in evi-
dence, that the accident happened in a dark night, owing to
the defendant's driving his carriage on the wrong side of the
road, the parties not being able to see each other, and that
if the defendant had kept the right side of the road, there
was ample room for the carriages to pass without injury;
but it did not appear that blame was imputable to the de-
fendant in any other respect; and on an objection, that the
injury happened from negligence, and was not wilful, and
that the proper action was case and not trespass *vi et armis*,

ALBANY,
August, 1820.

PERCIVAL
v.
HICKEY.

the plaintiff was nonsuited. After argument, the non-suit was set aside by the unanimous opinion of the Court. Lord *Ellenborough* said, the true criterion seemed to be, according to what Lord Ch. J. *De Grey* said, in *Scott* v. *Shepard*, (3 *Wils*. 411. S. C. 2 *Bl. Rep*. 892.) whether the plaintiff received an injury by force from the defendant; that if the injurious act be the immediate result of the force originally applied by the defendant, and the plaintiff be in-jured by it, it is the subject of an action of trespass *vi et ar-mis*, by all the cases both ancient and modern : that it was immaterial, whether the injury be wilful or not ; and speak-ing of the case of *Ogle* v. *Barnes*, (8 *Term Rep*. 128) he approved of the decision, though there were words which implied force by the act of another ; but it did not appear that it must have been the personal act of the defendants, it not being alleged that they were on board the ship at the time ; and he observed, he was not aware of any case of that sort, where the party himself sued, hav-ing been on board, this question had been raised. Mr. Jus-tice *Lawrence*, who gave an opinion in *Ogle* v. *Barnes*, ob-served, that he did not mean to say, that the distinction turned on the wilfulness of the act, and he so under-stood Mr. Justice *Grose* ; that what he principally reli-ed on there, was, that it did not appear that the mischief happened from the personal acts of the defendant. That the defendant negligently did such an act, might be sus-tained by showing that it was done by his servant in his employ, in the absence of the master. *Grose*, J. expressed himself very decidedly; he observed, that in looking into all the cases from the year book in the 21 *H*. VII. down to the latest decision on the subject, he found the principle to be, that if the injury be done by the act of the party himself at the time, or he be the immediate cause of it, though it happen accidentally, or by misfortune, yet he is answera-ble in trespass. *Le Blanc*, J. is equally explicit. He says, " In all the books, the invariable principle to be collected is, that where the injury is immediate on the act done, there trespass lies ; but where it is not immediate on the act done, but consequential, then the remedy is in case." He illus-trates the distinction by the case of a log thrown in the

highway.  If, at the time of its being thrown, it hit any per-son, it is trespass ; but if, after it be thrown, any person re-ceive an injury by falling over it, it is case.  He observed, that it was chiefly in actions for running down vessels at sea, that difficulties may occur, because the force which occasioned the injury is not so immediate from the act of the person steering.  The immediate agents of the force, (he said) are the winds and waves, and the personal act of the party rather consists in putting the vessel in the way to be so acted upon ; and whether that may make any differ-ence in that case, he would not then take upon himself to determine.  I do not consider it necessary to review the antecedent cases.  They all support the distinction taken by the judges in *Leame* v. *Bray.*  I will merely refer to some of them. (6 *Term Rep.* 128.  8 *Term Rep.* 191.  *Hob.* 134. 1 *Str.* 596.  5 *Term Rep.* 649.  1 *Str.* 636.)  It was strong-ly insisted, that *Leame* v. *Bray* was overruled by *Nicholson and another* v. *Mounsey & Symes,* (15 *East,* 383.) but that is a mistake.  That was a case against the captain and first lieutenant of a sloop of war, for negligently conducting the ship, so that, through mere negligence, bad management, and want of care, she, with great force, ran foul of and struck the plaintiff's ship, by reason whereof, it was sunk and lost.  The cause was referred, and the arbitrator re-ported, that at the time the mischief happened, *Symes,* the lieutenant, was the commanding officer of the watch, and was upon deck and directing the steering and navigating the sloop of war ; that *Mounsey* was not on deck, nor was he called upon by his duty to be so ; that he had not the appointment of the officers ; but he, as well as they, were appointed by the Commissioners of the Admiralty.  The arbitrator awarded for the plaintiff 4,500 pounds, damages, against both the defendants.  The case underwent a full discussion upon the question, whether *Mounsey* was liable at all ; and the Court held him not liable, on the ground, that he was a servant of his majesty, stationed on board that ship, to do his duty there, together with others, appointed and stationed there by the same authority, each having their several duties to perform, and that there was no personal interference of the captain with the act of the lieutenant,

by which the damage was occasioned, and that he ought not to be liable for the act of another, whom he did not appoint or employ ; and the award was set aside as regarded *Mounsey,* but judgment was given against the lieutenant. The case does not detail the evidence, nor was there a word said about the form of the action; but it does not admit of a doubt that, had *Mounsey,* the captain, been on deck, in the discharge of his duty, when the accident happened, that he would have been made responsible, for *Symes,* who was the acting officer, and directed the steering and navigating the sloop of war, was held answerable, without question or doubt. The case of *Stort* v. *Clements,* (*Peake's N. P.* 107.) was decided on the same principle, as was also the case of *Boucher* v. *Naidstrom,* (1 *Term Rep.* 569.) The case of *Covel* v. *Laming,* (1 *Camp. N. P. Rep.* 497.) which was subsequent to the case of *Leame* v. *Bray,* was an action of trespass for running the defendant's ship against the plaintiff's. It appeared, that when the accident happened, the defendant stood at the helm, and that he wished to steer clear of the plaintiff, and if he was to blame, it was through ignorance and unskilfulness. On the objection that trespass would not lie, Lord *Ellenborough* confirmed the doctrine he had delivered in *Leame* v. *Bray,* and said, it made no difference that the parties were sailing on ship board. The defendant was at the helm and guided the motions of his vessel. The winds and the waves were only instrumental in carrying her along in the direction which he communicated ; the force, therefore, proceeded from him, and the injury the plaintiff sustained was the immediate effect of that force ; and the plaintiff had a verdict.

The Court of Common Pleas have, undoubtedly, questioned the correctness of the decision in *Leame* v. *Bray,* though they have not overruled it. In *Rogers* v. *Imbleton,* (5 *Bos. & Pull.* 117 ) the declaration was, that the defendant drove his cart against the plaintiff's horse, with force and violence, whereby he was hurt and bruised, by and through the mere negligence, inattention, and want of proper care, of the defendant. The declaration was demurred to on the ground that it ought to have been trespass. The Court intimated a clear opinion, that as the injury was alleged to have ari-

sen from mere negligence, inattention, and want of care, the demurrer could not be sustained. Ch. J. *Mansfield* said, that it was not to be considered, that the case of *Leame* v. *Bray* was overturned by that decision; but, he said, it might, on a proper case, be proper that that decision should be re-considered. In *Huggett* v. *Montgomery*, (5 *Bos. & Pull.* 446.) the action was trespass for driving a certain ship or vessel, whereof the defendant was commander, to and upon and over a certain boat of the plaintiffs, and sinking her. It appeared, the defendant was master and owner of the vessel committing the injury, but though on board at the time, did not give the order which caused the accident; but the pilot did. The jury were of opinion, that the accident arose from negligence, and gave a verdict for the plaintiff. The Court were of opinion that trespass could not be maintained against the defendant, and said, the case differed from *Leame* v. *Bray*, intimating, at the same time, doubts as to the authority of that case. In *Turner and others* v. *Hawkins and others*, (1 *Bos. & Pull.* 472.) the plaintiff declared in case, for sinking his boat, and alleged the injury to have happened by the defendants not slackening the rope or line by which his boat was drawn, and then stated that the plaintiff's boat was driven and forced across the stream and sunk. There was a verdict for the plaintiffs, and on a writ of error to the exchequer chamber, the error assigned was, that the act complained of was a trespass *vi et armis*. *Eyre*, Ch. J. said, that when the objection is taken after verdict, the point ought to be very clearly made out. That it was clear that the cause of action was a nonfeasance, in not slackening the rope, and that it was fair to infer, that it was not intended to charge the defendants with wilfully driving their boat against that of the plaintiffs, and that all the circumstances were referable to the nonfeasance, which made it a complete action on the case, and the judgment was affirmed. In *Blinn* v. *Campbell*, (14 *Johns. Rep.* 432.) the plaintiff sued in an action on the case, and it appeared that the defendant, being a trooper, had wounded the plaintiff's leg, by negligently firing a pistol. We held, that if the injury is attributable to negligence, though it were immediate, the party injured has his election, either to treat the negligence of the defendant as the cause of action, and declare in case,

or to consider the act itself, as the injury, and to declare in
trespass.   The rule is laid down in the same manner in
1 *Chitty Pl.* 127. and is warranted by the cases he cites.

I am perfectly satisfied, from a review of the cases, that
if the defendant is liable at all, this action is appropriate,
and that it ought to have been trespass rather than case, as
the injury was immediate, and from gross negligence.

2.  It has been objected, that the answers of *Parker* and
*Dodd* to the thirteenth interrogatory, ought not to have
been read to the jury.   These answers relate to the value
of the vessel and cargo, and the interrogatory is the gene-
ral one.   It has been contended, that under that interroga-
tory, nothing can be answered, but what has been before
specifically inquired into.   This has not been shown to be
the practice in courts proceeding according to the civil law.
I perceive no abuse likely to follow from allowing the wit-
nesses to state every material fact under that interrogatory,
not before drawn forth by the special interrogatories, and
such, undoubtedly, was the object and end of the general in-
terrogatory.   It certainly was not intended to have the wit-
nesses repeat what they had before said; that would be idle
and unnecessary.   As the facts stated by the witnesses are
pertinent, I am of opinion, that they were properly allowed
to be read to the jury.

3.  It has been insisted, that the verdict was contrary to
evidence.   This has opened a wide range of inquiry, and I
have carefully, and attentively read, and considered the
testimony stated in the case.   Very much depends on the
credibility of the witnesses; and it became a very impor-
tant part of the inquiry, whether the accident was attribu-
table to design or negligence on the part of the defendant,
or whether it was involuntary and inevitable.   It was dis-
tinctly placed before the jury, that if it was the result of de-
sign or negligence, that then the defendant was answerable
for the consequences; but if it was involuntary and inevita-
ble, then he was not answerable, and a verdict ought to be
found in his favour.   It was a most material fact, in this view of
the case, whether the night was so dark, that those on board
the *Atalanta*, either with the naked eye, or with night glasses,
could see the *Mary*, or not, when she was at a consider-

able distance from the *Atalanta*. If she could be seen at a reasonable distance, say half, or a quarter of a mile, then the conclusion seems inevitable from all the testimony, that the collision might have been avoided. If *Ephraim How-ard*, the mate of the *Mary*, is to be believed, the night was not so dark but that the *Mary* might have been seen so far distant as to have been avoided; and it appears from the evidence of Captain *Pechell*, that he saw the operations of the *Mary* from the *Cleopatra*, at half past nine, and when the vessels closed. This last ship was at a much greater dis-tance from the *Mary* than the *Atalanta*; and it appears, that the *Atalanta* came up with the *Mary*, a little after eight o'clock, when muskets and a carronade were fired at the *Mary*. Captains *Coffin* and *Collins*, after being informed of the manœuvres of the vessels, agree in saying, that if the *Atalanta* had starboarded her helm, she would, in a length and a half, have cleared the *Mary*, if the latter was right a head; and they concur in the opinion, that the *Ata-lanta* must have seen the *Mary*, from the course she steered. It seems to be agreed, on all hands, that a chasing vessel is bound to take measures to avoid running foul of the chase. All the witnesses concur in saying, that it would have been extremely imprudent, as regards the safety of the *Atalanta*, to have intentionally run foul of the *Mary*, and those ac-quainted with Captain *Hickey*, exonerate him from any sus-picion of such intention. The jury have, in effect, acquit-ted him of any design to run down the *Mary*. They say it was the result of gross negligence. This was a matter of fact, and I cannot pretend to means of deciding the fact superior to what the jury possessed; and, on such a question, I am free to acknowledge, that an honest, capable, and upright jury, are the most competent to come to a correct conclu-sion. I cannot, therefore, say, that the verdict is against evidence.

4. An exception has been taken to the admission of *E. Howard*, the mate of the *Mary*, as a witness, on the ground that if the plaintiff recovers it is equivalent to the perform-ance of the voyage, and the insuring of freight; and that he will then be entitled to be paid his wages. It has been conceded, that in the case of capture and condemnation, though the owner recovers the amount of freight against the

insurers, the mariners are not entitled to wages. There has been no decision of which we are apprised upon the present point. From analogy to the admitted principle, that a recovery from the insurer does not give the mariner a right to recover wages, there would seem to be no objection to *Howard*, on the score of interest; and I conclude that he was a competent witness.

ALBANY,
August, 1820.

PERCIVAL
v.
HICKEY.

5. Although the defendant's counsel excepted to the opinion of the judge, at the Circuit, excluding copies of the proceedings instituted by the plaintiff, against the defendant, in the *High Court of Admiralty of Great Britain* to recover damages for the injury which is the basis of this action; and also for excluding certain affidavits, with exhibits annexed, taken in the Admiralty case, it has not, as I understand, been made a distinct ground of argument, that these proceedings were entitled to be admitted. The pendency of another suit for the same matter could, at most, only be pleaded in abatement. It is not pretended that any decision was ever made in the admiralty; nor that any witnesses examined in that suit are dead, or in a situation not to be re-examined. Under these circumstances, those proceedings were properly excluded.

6. It has been strongly insisted, that this Court has not jurisdiction of the cause; that it is a case of admiralty, not of common law cognizance.

The case of *Novion* v. *Hallet*, (16 *Johns. Rep.* 327.) decided in the Court for the Correction of Errors, and the learned and elaborate opinion delivered by Chancellor *Kent*, settles, incontrovertibly, that if the original taking was as prize, the court of Admiralty has exclusive jurisdiction of the case; that the jurisdiction is not affected by the fact that the capture was illegal, or violent, or unjust; that where the admiralty jurisdiction has once attached, by means of such taking as prize, it never can be devested by any matter subsequent, so as to give a Court of common law jurisdiction over the case, as a *tort* or trespass; and that the admiralty having jurisdiction of the principal subject, thereby acquires jurisdiction of all the incidents. That court did not profess to decide in what cases Courts of common law have jurisdiction of marine *torts*; the case itself did not require

ALBANY,
August, 1820.

PERCIVAL
v.
HICKEY.

an examination of that question, and no opinion was pronounced upon it.

Dr. *Brown*, in discussing the powers and jurisdiction of the admiralty, (2 *Brown's Civil and Ad. Law*, 111.) observes, that collisions, or ships running foul of one another, by which one or both are sunk or battered, afford cases of the most frequent occurrence ; and he says, that for this damage, if done at sea, remedy may be had in the admiralty. He then comes to consider whether for such injuries, courts of common law have a concurrent jurisdiction. This, he says, may have been doubted, but he thinks it clearly settled, in practice, that they have jurisdiction where the proceeding is not *in rem*, but merely for damages. He says, Sir *Leoline Jenkins* considered the bringing an action of *trover*, for a *tort* on the high seas, as an invasion of the authority of the admiralty. Sir *L. Jenkins* shows the superior facility and convenience of a suit in the admiralty, where the whole subject matter can be investigated and adjudicated in a single suit, whereas, at law, many might be necessary.

It is well known to those conversant with Admiralty proceedings, that the Court is two-fold : an *Instance Court*, which takes cognizance of contracts made, and injuries committed on the high seas, and the *Prize Court*, which has jurisdiction over prizes taken in time of war. The commissions to hold these Courts are distinct, though usually given to one person. The *Instance* Court is governed by the civil law, the laws of *Oleron*, and the customs of the Admiralty modified by statute. The *Prize* Court is to hear and determine according to the course of the Admiralty, and the law of nations ; (2 *Brown's Civil & Adm. Law.* 29.) and it cannot be doubted, that when we find it asserted in the books, that for a marine tort merely, redress can be sought in the admiralty, it is always meant in the *Instance* Court.

It is not to be denied, that the defendant, as the commander of a vessel of war belonging to his *Britannic* majesty, had a right, war then existing between *England* and *France*, of visiting and searching neutral merchant ships upon the high seas. This, by the laws of nations, is an incontestible right of the lawfully commissioned cruisers of a belligerent

nation. A mere attempt, on the part of the neutral mer-
chant vessel, to escape before any possession is taken by
the cruiser, is not unlawful, nor does it draw after it the
consequences of a condemnation. (*Chitty's Laws of Na-*
*tions,* 192. 194, 195.) In the present case, therefore, the
pursuit of the *Mary* by the *Atalanta,* for the purpose of a
search, was a lawful act. But it has been insisted, that
the defendant, and those on board the cruising ships, be-
lieved the *Mary* to be a *French* vessel ; that she was
pursued as such, with intention to capture her as prize of
war ; and although it turned out that she was not a *French*
vessel, but an *American,* and a neutral, yet the acts of the de-
fendant were done with intention to capture her, and
that, therefore, the question is one of prize or no prize, and
of admiralty jurisdiction. I cannot assent to this conclu-
sion. The intention to capture the *Mary,* as a prize, depend-
ed altogether on the supposition, that she was a *French* ves-
sel. It did not exist, if she was, in fact, an *American* vessel.
It was, therefore, a conditional intention, depending on the
event. As the character of the *Mary,* during the chace,
was uncertain, the defendant was bound to conduct himself
in such a manner, that his acts should be justified by the
event. The intention, in a given event, to make her a prize,
did not constitute the actual pursuit of a prize. There is
nothing in the whole course of the transaction to show
that in point of fact, the defendant treated the *Mary* as
a prize, or that when her national character was discovered,
he would have detained her as prize, or for any violation of
neutrality. I cannot, therefore, consider the injury received
by the *Mary,* in any other light, than as a marine trespass.

The cases of *Le Caux* v. *Eden,* (*Doug.* 526 ) *Lindo* v.
*Rodney,* (*Doug.* 591. note 1.) *Smart* v. *Wolff,* (3 *Term
Rep.* 323.) and many other cases which might be cited, re-
cognize the principle, that for seizing, stopping, and taking
a ship on the high seas, not as prize, an action lies at the
common law ; that a thing being done on the high seas,
does not exclude the jurisdiction of the common law ;
but that for taking as prize no action will lie at the
common law, and that the nature of the question did
not exclude the locality of the fact. A marine trespass,

free from the circumstance, that the vessel was taken *as prize*, is cognizable, concurrently, in the courts of common law, and in the *Instance* Court of the Admiralty. The latter Court has no more jurisdiction of the question of prize or no prize, than a Court of common law. It has been supposed, that the defendant's conduct can only be inquired into in the Admiralty, as it may involve questions of state, the discussion and decision of which may compromit the peace of the nation. Those are considerations to which this Court cannot listen, if they have jurisdiction of the cause. We are not at liberty to assume or decline jurisdiction, upon speculative grounds, or for reasons of public policy.

It has been thrown out, that for aught we know, *British* cruisers, at the time this injury was committed, having a right to overhaul neutrals, to search for contraband goods, and to carry them in for adjudication, may, also, have had instructions, in case of any attempt on the part of neutrals to escape, to run them down ; and that therefore the trespass, in this case, may have been committed in the exercise of a belligerent right, and, consequently, a Court of common law has not jurisdiction. The facts show that the *Mary* had submitted, and was in the act of coming under the *Atalanta's* stern, when the injury took place. The pursuit then was over, and it cannot be tolerated, nor will the Court infer, that the running foul of the *Mary* was in obedience to any orders given by the Commissioners of the Admiralty. I again say, that I perceive nothing in the case giving rise to the question of prize or no prize—nothing involving the laws of nations, or the *jus belli*. I perceive nothing but a maritime tort; and, until instructed to the contrary, of such torts, whether committed by a belligerent cruiser upon a neutral, under such circumstances, or by a merchant ship, I cannot but think we have jurisdiction. I am therefore of opinion, that the motion for a new trial ought to be denied.

YATES, J. and WOODWORTH, J. concurred.

VAN NESS, J. and PLATT, J. were of opinion that the verdict ought to be set aside, and a new trial granted.

Motion denied.