By the Court, Cowen, J.
The act incorporating the plaintiffs (2 K. & R. 418) authorized them to construct a turnpike on the line of the state road, with the necessary deviations, and to take toll. By that statute and the action of the plaintiffs under it, they acquired the usual rights of our turnpike companies. One of these is at least a right to lay out a road through the lands of others, and to exact the statute contribution from those who travel upon it, as a compensation for labor and expense. The way became the company’s own, and no person, without their consent, could lawfully use, incumber or otherwise interfere with it in anyway, except as travellers on the terms fixed by the act of incorporation. The plaintiffs acquired a franchise. To say that the defendants might lay and occupy a rail-road across the *175 turnpike, would be to recognize a principle by which, if followed out, the plaintiffs’ road may be rendered entirely useless, and their franchise destroyed. The act of the defendants has obstructed and impaired the free use of it, in some degree. That is not denied. If they have the right to do this, others have the same right; and the measure in which the plaintiffs’ property is to be enjoyed becomes a question determinable by such strangers as may happen to covet it, or envy the plaintiffs the exclusive use of it.
It is supposed that, by the true construction of the statute incorporating the defendants, the legislature have granted them the right to cross the turnpike. It is scarcely necessary to inquire whether the legislature intended to grant the right of violating the private property which they had before granted to tire, plaintiffs for a valuable consideration; because it is not pretended that the alleged statutory grant makes any provision that they shall be compensated. The right to invade their franchise must therefore be taken, if at all, as a gratuity; indeed it is claimed to be a gratuity. I have only to say that I think the act admits of no such construction as is claimed for it; and t ' that, if otherwise, it would undoubtedly be void within the express provisions of the constitution. (See the act, Sess. Laws of 1836, 493, 499, § 11; Fletcher v. The Auburn and Syracuse Rail-Road Company, 25 Wend. 462; Trustees of the Presbyterian Society of Waterloo v. The Auburn and Rochester Rail-Road Company, 3 Hill, 567.)
It is said, however, de minimis non curat lex. This maxim is never applied to the positive and wrongful invasion of another’s property. To warrant an action in such case, says a learned writer, “some temporal damage, be it more or less, must actually have resulted, or must be likely to ensue. The degree is wholly immaterial; nor does the law, upon every occasion, require distinct proof that an inconvenience has been sustained. For example, if the hand of A, touch the person of B., who shall declare that pain has or has not ensued? The only mode to-render B. secure is to infer that an inconvenience has actually resulted.” (Hamm. N. P. 39, Am. ed. of 1823.) “ Where a new market is erected neav " *176 ancient one, the owner of the ancient market may have an action; and yet, perhaps the cattle that would have come to the old market might not have been sold, and so no toll would have been gained, and consequently there would have been no real damage; but there is a possibility of damage.” (2 Ld. Raym. 948.) In Ashby v. White, wherein Powell, J. laid down this rule as to the market, it was held finally by the house of lords that, to hinder a burgess from voting for a member of the house of commons was a good ground of action. No one could say that he had been actually injured or would be; so far from it, the hindrance might have benefitted him. But his franchise had been violated. The owner of a horse might be benefitted by a skilful rider tailing the horse from the pasture and using him; .yet the law would give damages, and, under circumstances, very serious damages for such an act. The owner of a franchise, as well as of other property, has a right to exclude all persons from doing any thing by which it may possibly be injured. The rule is necessary for the general protection of property; and a greater evil could scarcely befall a country than the rule being frittered away or relaxed in the least, under the idea that though an exclusive right be violated, the injury is trifling, or indeed nothing at all.
It is surmised that the plaintiffs have no power to release their right; and that to hold the defendants liable would be to destroy their road. Various difficulties are raised. It is said that, at any rate, the right to be acquired from the plaintiffs must be temporary and cease with their corporate existence. If all this be so, it furnishes no argument for impairing their corporate rights. Beside, if there be a want of legal means to acquire the requisite title, the remedy lies in further legislation. The right of the plaintiffs may as well be made the subject of agreement or appraisal, as the rights of individuals in the land occupied by the road, or any other land.
It is clear, then, that the defendants have, in none of their pleas, made out an answer to the plaintiffs’ right. Do the pleas show that the plaintiffs have mistaken their remedy in bringing trespass? It is said, their right being incorporeal, they should *177 have brought case. Independently of authority, I should have thought this an objection of the merest form. The plaintiffs have, in their declaration, set out an injury which entitles them to compensation; and it undoubtedly contains enough for a declaration in case. It is now objected that, because the plaintiffs have added vi et armis, this vitiates; and the objection is taken by pleas in bar. The cases which hold that the plaintiff must be nonsuited at the trial if he sue in trespass when he should have brought case, or vice versa, are supposed to contain a principle which authorizes these pleas. (Percival v. Hickey, 18 John. 257; Wilson v. Smith, 10 Wend. 324.) If the supposition were correct, the principle will not apply when the pleas are demurred to as amounting to the general issue. Two of the pleas in question are specially objected to for that reason; and must, at all events, be overruled as defective in form. They do no more, at most, than show argumentatively certain facts which, according to the cases cited, would amount to not guilty modo et forma. It may be proper to treat the distinction as a substantial one at the trial; though I cannot but think that where the declaration clearly details a set of facts sufficient to make out a cause of action, and the facts are established at the trial, courts go far beyond what any general principle requires, in saying that, because the plaintiff happens to have miscalled his action in the beginning of his declaration, he shall suffer the penalty of a substantial variance. The name of the action is surplusage. At any rate, there is no precedent for raising the objection by special plea in bar. A plea in abatement showing that the action is improper, as that it is case, when it should have been account or general trespass, is indeed recognized as valid by the hooks cited in Com. Dig. “ Abatement,” (G. 5.) It can be nothing more. Admitting a good cause of action, but objecting to the kind of action brought, is the very definition of such a plea. The pleas in question should have begun and concluded accordingly. Being really pleas in abatement, an objection of form lies against them without a special demurrer; (1 Chit. Pl. 464, Am. ed. of 1840;) and on such pleading judgment is final. (Com. Dig. Abatement, (I. 15.) The pleas *178 failing as a bar, should, for these reasons, I think, be disallowed for any purpose.
Considered as special pleas in bar, they appear also to be defective within Nevins v. Keeler, (6 John. R. 63.) Each plea consolidates two counts, and answers them as one. This mode of pleading began and has been continued in Mr. Chitty’s book; (2 Chit. Pl. 556, N. Y. ed. of 1809; 3 id. 1103, Phila. ed. of 1828; 3 id. 1103, Springf. ed. of 1840;) although the later editions admit that it is bad, at least on special demurrer. (3 Chit. Pl. 1103, note (z,) Springf. ed. of 1840.) The ground taken in Nevins v. Keeler goes farther. The issue tendered is declared to be immaterial. Taylor v. Herbert, (1 Freem. 367,) a case of like pleading in assumpsit, seems to go the same length. In Edmonds v. Walter, (2 Chit. Rep. 291,)—the case of a plea that two libels in different counts were one and the same, and justifying the one—there was indeed a special demurrer; but the plea was held bad in substance. (See 1 Chit. Pl., Phila. ed. of 1828, p. 472, note (h); id. Springf. ed. of 1840, p. 413, 528, 552, 553.) One course mentioned by Mr. Chitty, in this last edition, (p. 528,) is, setting aside the plea on motion. (See the books there cited in note (o.)) This implies something beyond a mere defect of form. It is highly exceptionable pleading, first to aver that the plaintiff’s cause of action is something other than he, has himself made it in his declaration, and then plead to the new case thus fabricated for him. We have often of late set aside such pleas summarily, where they first averred that the general counts in assumpsit were intended of a note, and then went on to answer the note instead of the counts.(a) With the same propriety might a defendant first frame a count for the plaintiff and then demur. Such a demurrer is called a speaking one, and is always condemned as defective. The plea in Nevins v. Keeler was drawn by me while a student, from the form in Chitty. The precedent should have been long *179 since expelled from a book of such general excellence as that; a book almost sure to mislead where it happens to be wrong. The question is discussed by Mr. Justice Bronson, in Sterry v. Schuyler, (23 Wend. 487,) where the defect was treated as matter of substance.
It by no means follows, however, taking the case before us as the pleas would have it to be, that the plaintiffs’ action has been misconceived. The objection is, that their property in the road is incorporeal; and the general rule undoubtedly is, that for an injury to a right incorporeal, case only will lie. This is so in the same sense that case and not trespass must be brought for slander of title; but it does not follow that trespass may not be brought for an entry on the land, even though it lie vacant. Waiving the question whether the act incorporating the plaintiffs makes them owners of the soil either on the line of the old road or the line of deviation, and supposing it does not, they never could have carried out the purposes of their incorporation without an exclusive and corporal possession to the extent of their road. To that extent they actually did take and continue a pedis possessio for many years before the intrusion by the defendants. It does not follow that, because the right to do so was metaphysical, every thing they acquired and used in its exercise must necessarily partake of the same unsubstantial nature. The distinction is' taken in Wilson v. Smith, (10 Wend. 324, 327,) and illustrated by Mr. Justice Sutherland. The result of his argument is, that where the property injured is tangible, though the right to use it in a particular way be a franchise, the person entitled to the use not only may but must bring trespass if the injury be direct. The learned judge instances toll-bridges and ferry-boats. A turnpike road comes obviously within the same category, as much so as the toll-house. The only difference is that, in the one case, timber is shaped into a house, in the other, earth into a road; but both consist of materials wrought by the company into a certain form. Some of the road materials are perhaps purchased and transported from a distance; but whether so or not, they have been worked into the road. Thus modified, they may be treat *180 ed by the law as having become a physical structure, with as much propriety as if they had been worked into a mill-dam or a bridge. If the estate be perpetual, or for life, seisin may as well be averred of the road by name as of the dam or bridge; if for years, a possession may be averred; and there is in fact an exclusive seisin or possession of a corporal thing. The direct injury may be waived, and the consequential interruption of the incorporeal right redressed by an action on the case; but where you proceed for the direct injury to the fixture constructed in order to its exercise, Wilson v. Smith holds that you must bring trespass. The distinction is not new. In The Queen v. Soley, (2 Salk. 594, 11 Mod. 115, S. C.,) it was said that if the exercise of a corporate franchise of voting for officers be hindered by noise and clamor, it is a trespass; and several old books were cited which show that the violent disturbance of another in the use of any franchise may be redressed by an action of trespass. (See Y. B. 29 Edw. 3. 18; Reg. 94, 103.) So of an easement. In the Y. B. 2 H. 4. 11, it is said of a man having a private way, if another disturb him by a sword, club, or other weapon, he may declare in trespass. (Br., Accion sur le case, pi. 29; Vin., Chimin private, (c) pl. 2, S. C. & S. P.) In Woolr. on Ways, (p. 58,) this case is cited with approbation. A man’s cattle are driven from a common ; trespass lies. (1 Chit. Pl. 141, Am. ed. 1840.) Several other cases quite analogous are mentioned in Wilson v. Mackreth, (3 Burr. 1824,) which is itself in point. The defendant there having dug and carried away turf and peat which the plaintiff had an exclusive right to dig for his own use in the soil of another within certain boundaries marked by meer-stones, the plaintiff brought trespass quare clausum fregit. It was objected that case alone would lie. Lord Mansfield observed, there wanted nothing to answer the objection but to state the case. He said the plaintiff’s right was separate, butted and bomided; a separate right of property, to take the profit of the turf, and to dig it for that purpose. It was exclusive of all others, and the defendant had disturbed him. The right of the turnpike company in the principal case is the same. The result of the authorities is, that where the owner of *181 the franchise is personally interrupted in its exercise, he may have trespass for the injury done to his person. Where property pertaining to its exercise is injured, trespass quare clausum fregit or de bonis will lie, accordingly as the property may be real or personal. All the reasons in Wilson v. Mackreth apply to the principal case. The turnpike company had the exclusive right to a profit a prendre within limits marked by specific boundaries. They had been in the exclusive possession for many years, and the acts of the defendants were an entry and occupation of the thing possessed. Here are all the elements of a trespass quare clausum fregit.
Whether the right of soil was vested in the plaintiffs by the act incorporating them, especially on the line of the old road, may be questionable. Taking it, as perhaps we ought to do upon the pleadings, that the people were the owners, there is difficulty in saying that the legislature intended to confer any thing more than an easement on the plaintiffs. If the right of soil was not in the people, it is doubtful whether even an exclusive way with a right of toll could originally have been granted without providing for some compensation to the individual proprietors. This question, however, could only have arisen as between the plaintiffs and proprietors, and is doubtless gone by lapse of time. If not, the exclusive possession of the plaintiffs is available against the defendants, whom we are obliged to consider as wrong-doers. But in no view, perhaps, can the right of the plaintiffs be deemed more than an easement. The statute does not appear to contain words operating as a grant of more; nor would the nature of the plaintiff s’ claim and exercise of ownership, long as they have been, necessarily amount to any thing more.
As to the line of deviation, there is more plausibility for saying that the right of the plaintiffs is in the soil. The statute speaks of purchasing and holding the land itself, (2 K. & R. 419, 420, § 5,) and provides for compensating the owners by agreement or appraisal.
Independently of these questions, however, we think the plaintiffs are entitled to judgment.
*182 There is no need of leave to amend. No intimation has been given of a desire to plead any title other than the defective one in question, which cannot be sustained. If the defendants have any other title, it may come in under the plea of not guilty. (1 Chit. Pl. 500, Am.ed. of 1840.)
Judgment for plaintiffs on demurrer.

 See Anonymous, (19 Wend. 226 and note;) Dibble v. Kempshall, (2 Hill, 124;) Wilmarth v. Babcock, (id. 194.)