## Case No. 11,199.

### The PIZARRO v. MATTHIAS.

[10 N. Y. Leg. Obs. 97.]

District Court, S. D. New York.    Feb. Term, 1852.

COLLISION — LIABILITY OF FOREIGN SHIP OF WAR TO ARREST—JURISDICTION.

1. It is the proper mode of taking exception to the jurisdiction of the court in a civil action brought by a private suitor against an armed ship of a friendly power, for the U. S. attorney to file a suggestion in the name of the United States.

2. A ship of war belonging to a nation in amity with the United States, and not prohibited by the president a free entry into the ports of the United States, is not liable to arrest, on process from the local courts, for a wrongful collision within the territorial jurisdiction of the United States with an American merchant vessel.

The libel in this case was filed July 21, 1851, against the steamer Pizarro, for damages occasioned by a collision with the schooner Thomas Conner. It avers that the libellant [Cornelius H. Matthias] is a resident of Norfolk in Virginia, and owner of the schooner, which belongs to that port. That on the 17th day of July, 1851, the schooner was under way on a voyage from this port to her home port, and when off the light house at Staten Island, and about 200 yards from the shore, close hauled upon the wind, she met the steamboat Pizarro at about twelve o'clock at noon, coming into this port from sea, at the rate of twelve or fifteen knots the hour. That

the steamer attempted to pass in shore of the schooner, and thereby came in collision with her, breaking various parts of the vessel and doing her damage, which caused her delay in this port six days to make repairs. Process of attachment was prayed for and taken out in the usual course of practice the same day, and the marshal arrested the steamer thereon and made return to court of the arrest, on the 5th of August, 1851. On the 7th of November thereafter, the United States attorney for this district, on the part and behalf of the United States, and by direction of the executive power and authority thereof, filed a suggestion, and gave the court to understand upon the question of jurisdiction that the said steamer was a public armed vessel of war of her Catholic Majesty the Queen of Spain, and that there exists between the United States and the Queen of Spain a state of peace and amity, and that the public vessels of war of her majesty, while they conform to the law of nations and laws of the United States, can at pleasure enter the ports of the United States and depart therefrom without seizure, arrest, detention or molestation, by any civil process or other means, inconsistent with their rights by treaty or the laws of nations. The suggestion follows in large detail the statements set forth in one presented in the case of The Exchange, 7 Cranch [11 U. S.] 116, and is modelled in its averments upon that precedent. It is not necessary to rehearse more than the allegations of the libel showing the ground of action on which the point of jurisdiction is raised for the decision of the court.

J. Prescott Hall, U. S. Atty., in support of the suggestion.
George F. Betts, for libellant.

BETTS, District Judge. The case stated upon the libel is within the ordinary jurisdiction of this court, and the process prayed for is one which of right issues upon such complaint. Waring v. Clark [5 How. (46 U. S.) 441]. Under the established doctrines of the admiralty law ([Waring v. Clark] 5 How. [46 U. S.] 441), a libellant has his election in cases of maritime tort, to proceed in personam against the wrong-doer or in rem against the vessel as the instrument of the wrong and injury; and as a general rule, the vessel is held responsible in specie, to the same extent as her owner or master, for any injury sustained by others through negligence or misfeasance in her management, or other default of the master acting within the scope of his authority, equally in matters of tort as of contract. New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344; 3 Kent, Comm. (6th Ed.) 162, 218; Abb. Shipp. (Perkins' Ed.) 161, 166, and notes. On the execution of the process and arrest of the ship, in this case, the government of the United States constituted itself a party to the action in its political capacity, and claimed a right to intercept the jurisdiction of the court over the subject matter of the suit, and to that end filed and presented through its proper law officer the suggestion addressed to the court. It is this feature which gives significancy and special importance to the case, because the effect of the procedure is to interdict to the citizen a right of resort to any judicatory of the country for redress of injuries sustained by him in time of peace, within the dominions of the United States, from a ship of war belonging to a foreign power. The regularity of the proceeding on the part of the government in the method in which the objection is raised, and the privilege to interpose it, must be deemed definitely settled by the judgment of the supreme court in the case of McFaddon v. The Exchange, 7 Cranch [11 U. S.] 116, and to be no longer a debatable question before the inferior tribunals. The prerogative of the government of the United States to subrogate itself a party in place of the nation owning the offending ship, with the right to supersede all inquiry into the merits of the suit by a preliminary exception to the competency of the court to take cognizance of it, being conceded, the only question for consideration is whether the position of law upon which the interference is founded, applies to and governs this case. The proposition of the suggestion is that a ship of war belonging to a nation in amity with the United States, and allowed by the government of the United States to enter its harbors, is not, whilst within its territorial jurisdiction, subject to arrest on any civil cause of action at the suit of an individual.

No case in the United States or England is produced in which the point in so broad a form has been directly presented for judgment, nor do I find the rule recognized in the writings of any publicist of authority to the extent propounded by the suggestion. The supreme court of the United States, in the case of The Exchange, 7 Cranch [11 U. S.] 116, stated as a general proposition that such is the doctrine of the law of nations. It is, however, to be observed that the point under consideration and adjudged by that court was, upon the authority of a court of this country, to attach an armed ship of a foreign friendly power within our waters at the suit of an individual, and inquire into and decide the title to such ship of war, between the individual suitor and the nation under whose flag and commission she sailed. It is manifest that a distinction in point of principle and policy may exist between a question so circumstanced and a claim which affects the responsibility of a ship of war to individuals for acts or obligations which by the sea laws common to maritime communities are binding upon vessels domestic and foreign, and are enforced against them by courts of law, in many instances upon the fact of their foreign character. In the first case the validity of the authority of a sovereign over a national ship, commissioned by him, and whose flag

she bears, and also his right of property in the ship, would be made the subject of contestation,—an inquiry which might be regarded, if entertained and carried out by a foreign tribunal, as trenching upon the dignity and independence of the nation, and tending to subject its attributes of sovereignty to review and control by foreign tribunals; whilst in the case of the arrest of a ship of war for a supposed liability to an individual upon contract or for tort the court would not be intermeddling with questions touching the rightful acquisition of property possessed and claimed by a foreign sovereign, but would be only allowing the remedy common to its functions, to enforce the rights of a suitor against property, the ownership of which is not in contestation, placed voluntarily by the nation to whom it belongs, within the territorial jurisdiction of the court.

The suggestion filed in this case distinctly avers that the Pizarro came voluntarily into this port whilst prosecuting the business of the Queen of Spain. She was not, accordingly, constrained to seek shelter here from stress of weather or the pursuit of enemies, and has no plea of immunity from detention here for these causes. Spanish Treaty, Oct. 27, 1795, art. 8. The suggestion does not raise the objection to the action that the libellant did not in the first instance apply for redress to the officers of the ship, or to the representatives of the Queen of Spain, or to the queen herself. In a fitting case the court would no doubt restrain a party from arresting a ship of war of a friendly power until he showed he had no other means of redress, and had fairly sought it by application to the government owning the delinquent vessel. The proposition submitted for judgment goes to the extent of denying the liability of this ship to arrest, although the party complaining is refused and excluded from all means of obtaining his right by peaceable adjustment. This doctrine is of the broadest bearing. It is in no way limited to cases of tort, but applies to demands by ship-wrights, artisans, material men, pilots, wharfingers or owners of docks for repairs, and all other industrial classes who supply the ship services or necessaries indispensable to her safety and preservation, or to the health and subsistence of the officers and crew. The proposition, in this aspect of it, if now presented for the first time, in view of its effect upon the business pursuits of artisans and others connected with the fitments, reparation and salvage of ships of war out of the dominions of the sovereign owning them, would demand, particularly in a maritime court, the gravest consideration, before being implicitly adopted. The rule, certainly to that extent, is not recognized in the English admiralty. In the case of the line of battle ship Prince Frederick, belonging to the King of the Netherlands, which was brought into an English port by pilots, disabled in a slight degree, and libelled by them for salvage, Lord Stowell held that the ship was subject to the jurisdiction of the court, and decreed salvage against her to the amount of £800.

The case of The Santissima Trinidad, 7 Wheat. [20 U. S.] 284, may be regarded as importing a jurisdiction of the local courts, in certain exigencies, at the suit of individuals over a foreign ship of war. The action was not directly against the body of the ships, but was an attachment of property brought into a port of the United States, by two armed vessels under the flag of the United Provinces of the Rio la Plata, captured by them as prize of war. Although the supreme court reserved themselves from saying the ships would be amenable to the action, yet by recognizing the jurisdiction of the court over their prize property, at the suit of an individual charging the capture to have been illegal, it is most forcibly implied that the jurisdiction would be upheld against the ships themselves if they interposed any resistance to it. [The Santissima Trinidad] 7 Wheat. [20 U. S.] 354. Nor is it noticed in the decision as a particular any way affecting the jurisdiction of the court, whether the property was arrested on board the ships or not by the process of the local court, in distinguishing the case from that of The Exchange. It cannot depend upon the circumstances of a ship of war endeavoring to prevent the execution of process upon property in her custody, within a port of the United States, whether she is subject to the jurisdiction of the local court, because if whilst there she has under the law of nations the immunity of a license to remain and depart at pleasure, no private citizen can, because of a misuse of the privilege, on her part, deprive her of the benefit of such license. The exercise of jurisdiction upon her in such case would seem rather to be justified on the consideration that it was indispensable to the maintenance and enforcement of the right of the citizen; and that reason ought to have no less weight when the authority of the court is employed directly in support of his right than when it is invoked incidentally and collaterally. The gist of the principle is the exemption of the ship, and when that does not exist in one case, by parity of reason it would appear not to accord by law in the other. Jurists are by no means agreed that the property of a sovereign, placed within a foreign country by his consent, has attached to it by the law of nations a privilege of exemption from arrest in such country in favor of its citizens, for the debts or liabilities of the sovereign, incurred otherwise than through the instrumentality of the property itself. Martens says that the property of a foreign sovereign, who is not upon the spot, as well as that which belongs to his state or subjects, is under the jurisdiction of the state where it is found, is liable to seizure not only at the suit of the state, but of the subjects also, when they demand it in the regular course of justice, however motives of

policy might justify a refusal. Law of Nations, bk. 5, § 9.

In the case of salvors then in the English admiralty, the right to hold the ship in specie amenable, alike whether a foreign ship of war or a merchantman vessel for maritime services bestowed upon her is judicially established; and it can hardly be doubted that other classes of claims of similar equity would have the same protection awarded them; there can be no higher order of merit in the eye of the law in a demand accruing against a vessel upon a maritime contract, express or implied, than one against her arising out of a maritime tort committed by her. Moreover, it may be asked, upon what principle an armed ship of a foreign nation should be freed from responsibility for wrongful collision with another vessel at sea, that would not also free her commander from liability personally therefor? The national sovereignty represented by the commission and rank of the one ought not to be less respected than when represented in the materials of the other. Yet the responsibility of the highest officer in a foreign navy to a personal action in the courts of another power in favor of a citizen of the latter, for an injury inflicted negligently by a ship of war commanded by such officer upon the vessel of the citizen, is well established in law.

The subject was examined with great learning and care by the supreme court of this state in the case of Percival v. Hickey [18 Johns. 257], which was an action in personam, to recover damages occasioned by a collision at sea. The defendant was commandant of a British sloop of war, sailing with a squadron of vessels under a superior officer. He was ordered to give chase to the libellant's schooner. She refused to obey the signals of the sloop of war and to heave to when fired upon. She made all sail to escape, and the sloop, whilst manœuvreing to intercept her, came in collision with her, and she was sunken, and totally lost in consequence thereof. The captain of the sloop and officer in chief command supposed from all the circumstances that the schooner was a French cruiser. The British and French government were at the time at war. A verdict was rendered against the defendant for $29,734.94 damages occasioned by the collision, and the supreme court, on a careful consideration of the question, affirmed the verdict. The liability of the defendant was not controverted by his counsel,—as able and experienced as any in the state,—but the defence on the merits was placed upon an objection to the jurisdiction of the state court, it being insisted that the cause was one of admiralty and maritime jurisdiction, and only triable in a district court of the United States. As the functions of the court allow a party to pursue his right against the person committing a trespass upon his vessel at sea, or against the ship which is the instrument of the wrong, the reason is by no means an obvious one which would place the commandant of a ship of war within its jurisdiction for acts done on the high seas under his commission and in obedience to orders, but would exempt his ship from the same jurisdiction. The dignity of the sovereign would not seem to be less implicated by the exercise of the jurisdiction in the one method than in the other. The general principle clearly is that when a subject matter is brought within the jurisdiction of a court, the remedy in relation to it will be conformably to the functions of the court, whether by arrest of the person or attachment of the thing.

These considerations, if the question presented to the court were an open one, would have great weight in inducing it to regard the ship liable in this case for the injury the plaintiff sustained in the collision caused through her wilful or negligent mismanagement. A nation is regarded as sustaining an injury when a wrong is unlawfully inflicted upon its citizens or their property (Vattel, bk. 2, c. 6, § 71, p. 161), and the license implied from the courtesy of nations to the armed ships of each other to enter, remain in and depart from their ports, without liability to arrest or detention therein by private suits, cannot reasonably be supposed intended to protect them in the breach of those obligations which good faith and friendship impose upon them which avail themselves of the privilege. But on a careful consideration of the judgments of the supreme court upon this subject, already referred to, I am constrained to say those authorities treat the exemption of a national ship under the circumstances of the Pizarro as absolute and unlimited in respect to proceedings in behalf of individuals against her, and only admit the privilege or license lost when the ship commits a wrong upon the nation itself which harbors her, either in violating its neutrality or by some direct act of aggression against the national authority. The Exchange, 7 Cranch [11 U. S.] 116; The Santissima Trinidad, 7 Wheat. [20 U. S.] 354. So also those decisions are understood by an American writer of distinction and authority upon national law. Wheat. Int. Law, 139, 182.

This court will sedulously avoid adopting any doctrine which trenches upon an opinion declared by the supreme court respecting the general principles of law applicable to a particular subject, whether the point adjudicated by the court was placed upon the principle declared or otherwise. This is necessary in order to maintain harmony in the administration of the law by inferior judicatories. It is not enough, in my opinion, that the leading case before the supreme court (The Exchange [supra]), and decided by that high tribunal, embodied facts and equities differing from the one here under consideration to withdraw this from the authority of that decision, inasmuch as the supreme court, base their judgment upon a principle

broader than the particular matter in demand in the suit, and one which applies directly to the Pizarro.

The reasoning of the court on the doctrine of the law of nations governing the condition of armed ships in foreign ports, results in the proposition that they are under a license or privilege, which exempts them from arrest at the suit of an individual. That extent of exemption was not needed to clear the Exchange from the suit pending against her, but under that doctrine she was discharged, and it manifestly disposes of the action instituted against her. That doctrine embraces the right of action in this case, and must control the decision of this court.

I shall accordingly pronounce against the maintenance of the action, and order the steamship Pizarro to be discharged from arrest and be delivered up to the officer of the Queen of Spain in command of her. Nevertheless, as the libel charges that the collision of the Pizarro with the vessel of the libellant was both wilful and through gross negligence on the part of those conducting the steamer, and as the suggestion does not contest that allegation, the court imposes• no costs on the libellant. Decree accordingly.