## Case No. 574.

ASHBROOK et al. v. The GOLDEN GATE.

[Newb. 296;[1] 5 Amer. Law Reg. 148; 36 Hunt, Mer. Mag. 61.]

District Court, D. Missouri. Sept., 1856.

STATE AND FEDERAL COURTS — CONCURRENT ADMIRALTY JURISDICTION — MARITIME LIENS — ENFORCEMENT.

1. Under the judiciary act of 1789, the courts of the United States have cognizance of all civil cases of admiralty and maritime jurisdiction, ·exclusive of the state courts, except as to the common law remedy.

2. The common law remedy existed before the constitution and act of 1789, and is by the latter saved, not given.

3. A common law remedy is a remedy by action at common law, 'and is not a proceeding in rem or against the vessel.

4. A proceeding in rem is not a common law remedy.

5. The admiralty and maritime jurisdiction of the United States in rem, is exclusively in the United States courts.

6. There is no concurrent jurisdiction in rem in admiralty cases between the courts of the United States and of the several states.

[Cited in McAllister v. The Sam Kirkman, Case No. 8,658. Approved in Hill v. The Golden Gate, Id. 6,491.]

7. The proceedings under the statute of Missouri, entitled "An act concerning boats and vessels," are not strictly proceedings in rem.

8. Where, as in this case, a material man has a lien upon a vessel under the general maritime law of the United States, he has a right to enforce that lien by a suit in the United States court, although the vessel may have been subsequently seized and sold under the Missouri act concerning boats and vessels.

[Cited in McAllister v. The Sam Kirkman, Case No. 8,658.]

[See The Skylark, Case No. 12,928.]

9. Where a material man has no lien under the general maritime law, but has a lien under the state law, and the same law provides certain proceedings by which that lien may be divested, if those proceedings are had, his lien is divested, and he cannot sue in the United States court.

[In admiralty. Libels by Ashbrook and others against the steamer Golden Gate. Decree for respondent.]

John H. Rankin, for libelants.
Hudson & Thomas, for respondent.

WELLS, District Judge. In this case certain of the libelants had liens under the general maritime law of the United States; and others had liens under the statute of Missouri, entitled "An act concerning boats and vessels." Dig. Laws Mo. [Rev. St.] 1845, p. 180. Those having liens under the general maritime law, furnished supplies in Cincinnati, Ohio, where they resided at the time, and whilst the boat was owned in Missouri;

others resided in Missouri. and furnished supplies whilst the boat was owned in Ohio.: Those having liens under the state law resided in Missouri and furnished the supplies there, the boat at that time being also owned in Missouri. After the supplies were furnished, the boat was sold under the provisions of the above cited statute of Missouri; and the question now raised for the consideration of the court is, were these material men divested of their several liens by not intervening in the state court, or by the proceedings in the state court? It is a question of delicacy, as the decision of it may conflict with state laws; but I am compelled to decide it.

The provisions of the statute of Missouri make no distinction in terms between vessels· owned by citizens or subjects of foreign nations, or citizens of other states of the Union, and those owned by citizens of Missouri. They apply to "every boat or vessel navigating the waters of this state," (see the act, [Rev. St. Mo. p. 181,] § 1,) and to "contracts made within this state with boats used in navigating the waters of this state." See the case of James v. The Pawnee, 19 Mo. 517. If I understand correctly the language of Judge Story, he entertained the opinion that similar provisions in the statutes of the state of New York could not properly be construed to apply to any but domestic boats or vessels—that is, those owned in New York. The Chusan, [Case No. 2,717.] But the supreme court of Missouri makes no distinction between foreign and domestic vessels. James v. The Pawnee, supra. The case now under consideration differs from that of The Henrietta, [Case No. 6,121.] In that case the boat was owned in Missouri, and the supplies were furnished in Illinois. I held that the case did not come within the provisions of the steamboat law of Missouri, because the vessel was not, at the time the contract was made for the supplies, "navigating the waters of this state;" nor was the contract made or supplies furnished "within this state," and, therefore, the lien obtained in Illinois under the general maritime law, was not divested by the sale in Missouri. But much of the reasoning in that case is applicable to this case, and will not be here repeated.

Is the admiralty and maritime jurisdiction in rem, exclusively in the United States courts? When I wrote the opinion in the case of The Henrietta, I had never known it questioned; but in a recent decision by the supreme court of Ohio, it is questioned and denied. See Thompson v. The J. D. Morton, 2 Warden, 26. That court appears to think that the provisions of the ninth section of the judiciary act of congress makes the jurisdiction of the district courts exclusive only as relates to the circuit courts of the United States. In that opinion I cannot concur. The ninth section of the judiciary act, 1789, [1 Stat. 76,] declares that the district courts

of the United States shall have, in certain cases specified, first: Jurisdiction or cognizance exclusive of the courts of the several states. Second: In other cases jurisdiction concurrent with the courts of the several states, or the circuit courts of the United States, as the case may be. Third: And in other cases, exclusive original cognizance, without mentioning any other courts, either federal or state; and this last includes all civil causes of admiralty and maritime jurisdiction, including certain seizures on water, "saving to suitors, in all cases, a common law remedy, where the common law is competent to give it;" and a like cognizance in other cases of seizure without any saving.

In the first class of cases, as I have arranged them, the jurisdiction is not declared to be exclusive except as to the state courts; and there is, therefore, an implied exception as to the jurisdiction of the circuit courts of the United States. In the second class, the grant is not declared to be exclusive, but concurrent, and the jurisdiction both of the courts of the several states and the circuit courts of the United States is excepted. In the third class there is no exception of the exclusiveness as to either the courts of the several states or the circuit courts of the United States, except as to the common law remedy in the first branch of that class, and without that exception as to the other branch. So that, in the third class, which includes the admiralty and maritime jurisdiction, there is no exception except that of the common law remedy, as to the exclusiveness of the original jurisdiction in the district courts. It is absolute, unconditional and exclusive. But the grant of exclusive original jurisdiction to the district courts, does not exclude the appellate jurisdiction of the circuit courts, which is also provided for in the twenty-first section of the same act. This seems to me conclusive. Again: As to all other matters mentioned in the third class, there never has been any doubt as to the jurisdiction being exclusive as to the state courts. Why then is it not exclusive as to the admiralty and maritime jurisdiction? The same language is used as to all.

The supreme court of the United States, Judge Marshall delivering the opinion, in the case of Slocum v. Mayberry, 2 Wheat. [15 U. S.] 9, expressly decided that the jurisdiction of the United States courts, as to seizures on land and water, is exclusive of the courts of the several states. This is embraced in the second branch of the third class above. In the case of Gelston v. Hoyt, 3 Wheat. [16 U. S.] 246, the question in the supreme court of the United States is put beyond all dispute. The court is discussing the question of the exclusive jurisdiction of the United States courts as it regards the state courts, and declares that "By the judiciary act of 1789, c. 20, § 9, [1 Stat. 76,] the district courts are invested with exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, and all seizures on land and water, and of all suits for penalties and forfeitures incurred under the laws of the United States." Similar phraseology is used in the eleventh section of the judiciary act, which gives the circuit court "exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except where this act otherwise provides, or the laws of the United States shall otherwise direct," without mentioning the state courts; yet no one has ever doubted that the jurisdiction here given, was exclusive of the state courts. See, also, 1 Conk. Adm. 349. The opinion (excepting so much as regards the effect of the 9th section of the judiciary act) given by the supreme court of the state of Ohio, in the case above cited, and the opinion expressed by that court in the case of Keating v. Spink, 3 Warden & S. 105, do not apply to the case I am considering, although they deny exclusive jurisdiction in rem to the United States courts in admiralty causes. The cases in which those opinions were delivered, arose and had to be decided under the act of congress of the 26th February, 1845, [5 Stat. 726,] which applies only to the lakes and their connecting rivers, and which not only saves the common law remedy, but also "any concurrent remedy which may be given by the state laws."

1st. Let us now see how the matter stands. The courts of the United States have cognizance of all civil causes of admiralty and maritime jurisdiction, and have it exclusive of the courts of the several states, except as to the common law remedy.

2d. This is a civil cause of admiralty and maritime jurisdiction.

3d. The libelant has a lien given by the general maritime law of the United States; it is as much a vested right as that of a mortgage. It is a contract which the legislature of a state can pass no law to impair. Bronson v. Kinzie, 1 How. [42 U. S.] 311.

4th. The party having this lien is entitled to sue in the United States court, in admiralty, to enforce it. This right is given by the laws of the United States.

5th. The laws of the United States are supreme over state laws.

6th. A state law comes in and declares that the party having this lien shall either sue in the state courts (under the "act concerning boats and vessels,") or lose his lien.

Can it be possible such state law is valid? The United States law, and the state law cannot both be enforced. The first gives the party a right to sue in the United States courts, and there to establish his claim and obtain the enforcement of his lien; the second declares that if he does not sue in the state court, that is, if he sues in the United States court, he shall get nothing. I refer to the case of Shelby v. Bacon, 10 How. [51 U. S.] 69, 70, 71, to show that where a person has the right to sue in the courts of the United States, no state law, and the proceed-

ings of no state tribunal, can deprive him of that right. It is substantially as follows: The Bank of the United States, after obtaining a charter from the state of Pennsylvania, failed. It made assignments of its assets under the laws of that state. The assignees, according to those laws, were to receive and collect the assets and allow debts and pay creditors; all under the control and jurisdiction of the court of common pleas of that state. If creditors did not exhibit their claims and get them allowed, they obtained no part of the assets of the bank. A creditor who resided in Kentucky, brought suit in the circuit court of the United States. The assignees pleaded to the jurisdiction of the court. The case went to the supreme court of the United States. That court held that the plaintiff, as a citizen of another state, had a right to sue in the courts of the United States, and the state law could not deprive him of that right. The court says: "To establish this claim as against the assignees, the complainant has a right to sue in the circuit court of the United States which was established chiefly for the benefit of non-residents." "On the most liberal construction favorable to the exercise of the special jurisdiction, the rights of the plaintiff, in this respect, could not, against his consent, be drawn into it." "Citizens residing, perhaps, in a majority of the states of the Union, are debtors or creditors of the bank. It is difficult to perceive by what mode of procedure the state of Pennsylvania can obtain and exercise an exclusive jurisdiction over the rights of persons thus situated."

It appears to me that if a person having a lien under the general maritime law, cannot resort to this court—a court of exclusive jurisdiction in admiralty cases—because of the provisions of the state laws and proceedings under them, then the whole subject is reversed, and the state courts have the exclusive jurisdiction; and in that way the entire jurisdiction, in all cases, of the courts of the United States, might be absorbed by the state courts. I am speaking of the effect of such laws, not of the motives or intentions of the legislature in passing them; for, to do the legislature of Missouri justice, the steamboat laws were enacted some sixteen years before it was understood that the United States courts had jurisdiction of cases arising out of our inland navigation upon the public rivers of the United States.

The act of congress, section 9, above referred to, saves to suitors the right of a common law remedy, when the common law is competent to give it. It is a common law remedy, as distinguished from a remedy in the admiralty, or in chancery. This common law remedy existed before the constitution and act of 1789, and is, by the latter, saved, not given. 2 Brown, Civil Law, 111, 112. But a common law remedy is a remedy by action at common law, and is not a proceeding in rem, or against the vessel itself.

Id., and note 53 to page 111. Courts of common law do not proceed in rem. Percival v. Hickey, 18 Johns. 292; Waring v. Clarke, 5 How. [46 U. S.] 461; Clarke v. New Jersey Steam Nav. Co., [Case No. 2,859;] 1 Kent, Comm. (2d Ed.) 378. Opinion of Mr. Justice Catron, in Waring v. Clarke, supra. And therefore a proceeding in rem cannot be a common law remedy.

The common law is competent to give a remedy in many cases, which are cases of admiralty and maritime jurisdiction. Thus a material man may proceed in admiralty either against the vessel in rem, or against the owners in personam, or against the master in personam. He has also his remedy at common law, which would be an action of debt or assumpsit against the owners, or a like action against the master for the value of the supplies furnished. In some, if not all cases of collision, where a party injured could maintain a suit in rem in the admiralty, he could also maintain an action of trespass at common law. Percival v. Hickey, supra. So an action of trover will lie in many cases of a wrongful dispossession of vessels, although there is a remedy also in the admiralty. Why are suitors, not suing in the admiralty, but in the state courts, limited to a common law remedy, and are not authorized to proceed in rem? The proceedings against ships and vessels affect the citizens and subjects of foreign nations, as well as the citizens of the several states; and it is important that the principles and rules for determining rights and injuries, and the courts to administer them, should be those known to the law of nations; and those principles and rules should be uniform throughout the United States, so also of the remedies.

If the courts and officers, including justices of the peace and constables, of the several states, can proceed in rem, against the vessels of other states, so they can against foreign ships and vessels, and thus ships would be seized, voyages would be broken up, the United States involved in difficulties and reclamations with foreign nations; a multiplicity of laws, rules and proceedings, contradictory and inconsistent with each other in the several states, be introduced; and thus the exclusive right and jurisdiction of the United States over our foreign relations, and over the commerce and navigation of the United States, both foreign and domestic, would be interfered with and rendered impracticable. And the states themselves would soon get into conflicts of jurisdiction and laws, and resort to laws retaliatory and vexatious upon the shipping of each other, as was the case before the adoption of the federal constitution. It must be remembered, also, that the navigable rivers of the United States are not the exclusive property of any state or states, but are common to all. Ben. Adm. 114. And that vessels navigating those rivers are enrolled and licensed by the

United States, and that such license imports full power and authority to navigate them; and no other authority is necessary.

In relation to the authority of the United States courts and the state courts in admiralty cases, see The Spartan, [Case No. 4,085;] Certain Logs of Mahogany, [Id. 2,-559;] Wall v. The Royal Saxon, [Id. 17,093;] [The Flora,] 1 Hagg. Adm. 298; The Flora v. The Globe, [Case No. 4,879.] I do not find any reported case in which is satisfactorily discussed and decided the question how far, under the 9th section of the judiciary act, the courts of the several states have jurisdiction to proceed in rem against ships and other vessels enrolled or registered and licensed under the laws of the United States. I find cases decided, which arose under the act of 1845, extending a quasi admiralty jurisdiction to the lakes and their connecting rivers; which are, as already shown, not applicable to the commerce and navigation on other rivers. Some other cases speak of a concurrent remedy at common law, and say that the jurisdiction of the courts of the United States is not exclusive. This is all true, because the common law remedies are saved; but they do not discuss the legality of a proceeding in the state courts in rem, and how far it is affected by the 9th section of the judiciary act. It was said in the case of The Robert Fulton, [Case No. 11,890,] that under the law of New York, [1 Rev. Laws N. Y. p. 130, as amended Laws N. Y. 1817, p. 49; 2 Rev. St. N. Y. (1st Ed.) p. 180,] a somewhat similar statute to that of Missouri, the state courts proceeded in rem, and have a concurrent jurisdiction. After a most careful, and I may say, laborious investigation of the subject, I cannot discover on what principle that opinion can be maintained. The court merely says, "that the state tribunals had authority also to enforce the lien (given by the statute of New York), in the present case, is very certain, from the express provisions of the law of New York. There was, then, a concurrent jurisdiction in the two courts, and the proceedings under the state authority were in the nature of proceedings in rem." Now, with the greatest respect for the opinions of the learned judge who delivered the above opinion, it appears to me that the concurrent jurisdiction in rem, of the United States and state courts cannot depend on the statutes of the state, but on those of the United States.

Let us examine carefully and critically the language used in the constitution of the United States, and also that used in the 9th section of the judiciary act; it will aid us in the investigation. The constitution declares that, "The judicial power shall extend to all cases of admiralty and maritime jurisdiction." The 9th section of the act declares that, "The district courts of the United States shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction." "Saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." It has been said that, perhaps there has never been in the United States, a law more carefully and ably digested, than that of 1789. In this opinion I fully concur. It has remained almost untouched for sixty-seven years; it originated in the senate, which then possessed men of eminent ability, several of whom were distinguished members of the federal convention. Oliver Ellsworth, afterwards chief justice of the supreme court of the United States, was chairman of the committee to whom the subject was referred, and who is said to have prepared the bill. Observe, the only exception to the exclusive cognizance is, not a remedy in the common law courts, but a common law remedy. The remedy is to be the common law remedy, no matter in what state court it may be sought or what may be the system under which the court may proceed. There is also a qualification of this saving of a common law remedy; it can be only in a case "where the common law is competent to give it." This qualification was, doubtless, intended to cut off new remedies which might be devised, but which were unknown to the common law; for, if the common law was not competent to give the remedy sought, then the party could not resort to any other, but must sue in the United States court in admiralty. A suitor cannot therefore say "a common law remedy is saved to me, and if there be none to effect my object (the seizure of a vessel), I can use any the legislature may have devised for my case." What, then, is the common law remedy spoken of in the ninth section? In my judgment, it can be only common law actions, actions of debt, assumpsit, case, trespass, trover, &c., as known and practiced at the common law. Such are the only common law remedies then, or indeed now known; and these, in many cases, are proper remedies, and such as the common law is competent to give. But a proceeding by bill in equity is unknown as a common law remedy; and a proceeding in rem is unknown as a common law remedy. What lawyer ever knew or heard of a proceeding in rem as a common law remedy? Even the actions of detinue and replevin have in them nothing of the nature of proceedings in rem. Each requires a plaintiff and defendant who are persons, and the judgments bind no one but parties and privies. True, a proceeding in rem may be used in common law courts of the states, but in all such cases it is given by statute, or is a proceeding under the civil law. And the fact that it is given by statute and did not exist before the statute which gave it, in states where the common law prevails, shows that it had no existence as a remedy at the common law. I do not speak of modifications and improvements of actions at common law, which may doubtless be made by the legislatures, and still be

within the meaning of the ninth section, but the proceeding in rem is given originally and entirely by statutes where it exists in common law courts, and is not merely modified and improved.

When a court has jurisdiction to proceed in rem, and does so proceed, its judgments are binding and conclusive on the whole world, and this is so, whether the tribunal be foreign or domestic. The Mary, 9 Cranch, [13 U. S.] 126. Not so with judgments at common law: they bind only parties and privies. If the state courts can have jurisdiction in admiralty cases conferred on them by state statutes, to proceed in rem, so they can to proceed in equity, and this would constitute them, to all intents and purposes, courts of admiralty; and this jurisdiction can be, and in many cases is given by the state laws to justices of the peace, and to constables, as their ministerial officers. If there is an average of fifty counties to each state, and twenty justices of the peace to each county, we should then have in these United States, thirty-one thousand courts of admiralty and maritime jurisdiction, to say nothing of the courts of record. These courts proceeding against, and seizing and selling vessels of foreign nations, and those of sister states, although they would have all the powers of courts of admiralty, yet they would, in but few instances, proceed according to the maritime law, which is part of the law of nations, nor according to acts of congress (for congress can pass no law regulating proceedings in the state courts); but they would proceed according to the statutes of the several states, and usages that would there prevail: each state having a different system. The effect of this must be, it appears to me, to embroil the United States with foreign nations, and the several states with each other, and to produce retaliatory laws and proceedings, and endless conflict, uncertainty and mischief. And this, I repeat, would render nugatory the provisions of the 9th section of the judiciary act of 1789, and the power of congress to regulate commerce and (navigation as incident thereto) with foreign nations and among the several states. If I am right in the views above expressed, there can be no concurrent jurisdiction in rem in admiralty cases between the United States courts and the courts of the several states. I do not, however, consider the proceeding in the state courts of Missouri against boats and vessels as strictly a proceeding in rem. It is, it appears to me, a proceeding devised for suing the owners; but instead of using the name of the owner, it uses that of the boat. In some cases, arising under the act, a judgment is rendered against the boat for the demand of the plaintiff only, execution thereupon issues, and only enough is collected to pay the plaintiff's judgment and costs; and there is consequently nothing to distribute among other creditors or claimants. In no case can creditors, material men and

others, although having valid liens, intervene and have their claims adjudicated and get any part of the proceeds, unless the contract for supplies, &c., was made within this state, and the boat at the time navigating this state. James v. The Pawnee, 19 Mo. 517. So I presume it would be as to the other contracts, and as to injuries specified in the act. Such proceedings do not look much like proceedings in admiralty, or proceedings in rem. See the opinion of this court in the case of The Henrietta [Case No. 6,121.] Be this as it may, I could not give to those proceedings the effect which is given to the proceedings strictly in rem. I am, therefore, of opinion that the material man, who has a lien under the general maritime law of the United States, has a right to enforce that lien by a suit in the United States court; and that the state law, and proceedings under it, given in evidence in this case, do not deprive him of that right. The Chusan, [Id. 2,717;] Certain Logs of Mahogany, [Id. 2,559.] But how is it with the material man who has no lien under the general maritime law, but has a lien under the state law?

The subject is not without its difficulties; but I think that as the lien is given by the state law, the state law may divest it. If he takes under the state law, he must hold under the state law. He takes his lien subject to all the provisions for divesting it contained in state laws passed anterior to his lien. He takes it cum onere. Bronson v. Kinzie, 1 How. [42 U. S.] 311; The Chusan, [supra.] The statute which gives the lien—and which is the only law which gives him a lien—provides for certain judicial proceedings by which the vessel may be sold and the lien divested. The 13th section of the "act concerning boats and vessels" (Dig. Laws [Rev. St.] Mo. 1845, p. 183,) declares that, "when any boat or vessel shall be sold under the 11th section of this act, the officer making the sale shall execute to the purchaser a bill of sale therefor, and such boat or vessel shall, in the hands of the purchaser and his assigns, be free and discharged from all previous liens and claims under this act." What the law gave, the law hath taken away. The libelant cannot complain, his lien is divested by the same law and the same authority which gave it.